## Shumega, Appellant, v. First Catholic Slovak Union of the United States of America.

*Beneficial associations — Substituted beneficiary — Contract — Validity of contract—Payment of dues by substituted beneficiary— Act of April 6, 1893, P. L. 7.*

Where a member of a beneficial association incorporated in the State of Ohio and lawfully doing business in the State of Pennsylvania agrees with a man and wife, who are not related to him, that if they will receive him into their house, provide him with food, lodging, medical attention and care, and pay to the association the dues necessary to retain his membership, he would substitute them as beneficiaries, and the association accepts the substitution, and enters it upon its books, and the president of the National association agrees that the association shall pay the death benefits to the substituted beneficiaries, if the latter shall pay the dues, and the substituted beneficiaries fully perform their contract to the members, and pay his dues until his death, they will be entitled to the death benefits at his death and the Pennsylvania Act of April 6, 1893, P. L. 7, limiting beneficiaries to the family, heirs, blood relatives, affianced husband or wife of, or to persons dependent upon the member, does not apply. The act does not either prohibit or declare invalid such a contract.

Argued March 2, 1915. Appeal, No. 29, March T., 1915, by plaintiff, from order of C. P. Luzerne Co., Dec. T., 1911, No. 856, dismissing exceptions to report of referee in case of John Shumega and Elizabeth Shumega v. The First Catholic Slovak Union of the United States of America. Before RICE, P. J., ORLADY, HEAD, KEPHART and TREXLER, JJ. Reversed.

Exceptions to report of Frank P. Slattery, Esq., referee.

The referee stated the facts to be as follows:

The defendant is a beneficial society incorporated January 12, 1892, in the State of Ohio, for the purpose of improving the "moral, mental and social conditions of its members, to aid and assist its members or their

families in case of sickness or death, to uphold, preserve intact and perpetuate the doctrine of the Holy Roman Catholic Faith, to institute and control such other branches of the said corporation as it may see fit, under such rules, by-laws and regulations as it may hereafter adopt and establish, not to conflict with the laws of this State." On the 20th day of September, 1900, at Pittston, Luzerne County, Pennsylvania, John Hvasta was accepted as a member of the defendant society, through one of its branches located there known as "St Cyrill and Methodius Branch 350." This branch was organized at Pittston aforesaid on August 26, 1900. The original application for membership on the part of John Hvasta was not produced. It appears in the testimony however, that on April eleventh, 1911, he directed on the books of the defendant in the manner required by its by-laws, that his death benefit in case of his death be disposed of as follows: for funeral expenses, $150.00; to his son, Michael Hvasta, $50.00; to his daughter, Mary Hvasta, $50.00; and "the balance to the boarding boss who will take care of me and help me up to my death, John Shumega and his wife, Elizabeth Shumega." It is agreed that the balance here referred to amounts to seven hundred ($700.00) dollars.

John Hvasta died August 4, 1911, in Exeter, Luzerne County, Pennsylvania. He left to survive him a widow and two children. On account of cruel treatment this same woman with her children, deserted Hvasta nine (9) years before his death and went to live in Zanesville, Ohio, where she has lived continuously since that time, remarrying after the death of Hvasta.

In February, 1911, six (6) months before he died, John Hvasta was in ill health, suffering from dropsy, and without a home. He applied for and was refused admittance to the home of his sister, Mary Wazik. For the purpose of securing a place to live where he would be cared for, he then went to the home of the plaintiffs, John Shumega and Elizabeth Shumega, his wife, the

former being engaged in the conduct of a saloon business in Exeter, and he promised to make the plaintiffs the beneficiaries of his death benefit in consideration for their boarding and lodging him, nursing and caring for him, providing medical attention, and necessary medical supplies, and paying his dues in the defendant society during the balance of his natural life. In pursuance of this arrangement, Hvasta made a will whereby he bequeathed seven hundred ($700.00) dollars mentioned. A month after the designation had been made on the books of the defendant, plaintiffs called on Andrew V. Kozak, the national president of the defendant society, and informed him of what had transpired, and they alleged that Mr. Kozak represented to them that, if they had paid Hvasta's dues during his lifetime, they would receive their designated share of the death benefit in the event of his death. Mr. Kozak denies that he made any such representation. Hvasta made his home in the family of the plaintiffs until his death. They cared for him, nursed him, boarded and lodged and clothed him, provided him with medical attention, paid for the drugs that were prescribed for him, and paid his dues for him in the defendant society, thus keeping alive his policy therein.

The designation of the plaintiffs as beneficiaries on the books of the defendant was surrounded by all the formality required by the by-laws of the defendant, and the defendant is willing to pay the money to the plaintiffs if they are legally entitled thereto, but wishes to be protected against a possible wrong payment, and for this purpose only makes a defense. The society defends on the ground that the defendant society comes within the scope of the requirements of the Act of Assembly of the Commonwealth of Pennsylvania, approved April 6, 1893, P. L. 7 and its supplement, and that consequently the death benefits are payable only to a member of the class of beneficiaries named in the act.

The referee found in favor of the defendant.

Exceptions to the referee's report were dismissed in an opinion by WOODWARD, J.

*Errors assigned* were in dismissing exceptions to the referee's report.

*John Menovsky,* for appellants.—The substituted beneficiaries are entitled to the death benefits: Maneely v. Knights of Birmingham, 115 Pa. 305; Compton's Est., 25 Pa. Superior Ct. 28; Donithen v. I. O. of O. F., 209 Pa. 170; Menovsky v. Menovsky, 19 Pa. Superior Ct. 427.

Where the beneficiary gives valuable consideration to the member (under a contract to appoint—or under a contract not to substitute another beneficiary), the beneficiary acquires a vested right to the benefit—and not a mere "expectancy," as in other cases: Pa. R. R. Co. v. Wolfe, 203 Pa. 269; King v. Supreme Council, Etc., 216 Pa. 553; Haller v. Haller, 45 Pa. Superior Ct. 409.

The defendant is now estopped to plead ultra vires: Presbyterian Board v. Gilbee, 212 Pa. 310; Doylestown & D. T. R. R. Co. v. El. Ry., 49 Pa. Superior Ct. 381; Wright v. Pipe Line Co., 101 Pa. 204; Mut. Trust Co. v. Stern, 235 Pa. 202.

Inasmuch as the referee found that both the special contract and the designation under it were not prohibited by charter and by-laws of defendant society, no question of ultra vires (under charter and by-laws) arises in this case: Bloomington Mut. L. Ben. Assn. v. Blue, 120 Ill. 121; Martin v. Stubbings, 126 Ill. 387; Ledenbuhr v. Wisconsin Trust Co., 88 N. W. R. 607.

The question presents itself:

Does the Act of 1893 constitute "an absolute statutory prohibition respecting the naming of beneficiaries" (referee's opinion), thus making the special contract in this case "illegal" (opinion of the court), in its proper and legal sense?

To which we reply in the negative:

(1) Because section 1 of said act simply "places a limitation upon the powers and privileges" of societies incorporated under said act.

(2) There is not one word in said Act of 1893, which provides that "it shall be unlawful" or that "it shall not be lawful" for any society to make provisions for payment of benefits outside of the classes mentioned in said section 1, or to make any contracts for such payment: Haller v. Haller, 45 Pa. Superior Ct. 409.

It may be that the defendant was without "power or authority" to enter into the contract; and, if so, that would be saying one thing. But to state that the contract was "illegal" or unlawful in the sense that no question of estoppel can possibly arise, we submit is stating an entirely different thing: In Wright v. Pipe Line Co., 101 Pa. 204; Hunter v. Fireman's R. & B. A., 20 Pa. Superior Ct. 605; Harton's Est., 213 Pa. 499.

*Frank T. McCormick*, for appellee.—The naming by Hvasta of a beneficiary did not create any contract between him and the society, such act being merely a designation or appointment: Thomeuf v. Knights of Birmingham, 12 Pa. Superior Ct. 195; Love v. Love, 22 W. N. C. 119; Brown v. A. O. U. W., 208 Pa. 101.

The designation of plaintiffs as beneficiaries was not valid under the Act of April 6, 1893, P. L. 7.

The appellee is not exempt from the provisions of the Act of 1893, Section 4: Federkiewicz v. National Slavonic Society, 59 Pittsburgh Law Journal 511.

If the designation of the appellants as beneficiaries and the representation made by Mr. Kozak, constituted a contract, whether it be called special or otherwise, we contend that such a contract was beyond the power of the association to make, in view of the provisions of the Act of April 6, 1893, P. L. 7, restricting beneficiaries to the class therein named: Mikesell v. Mikesell, 40 Pa. Superior Ct. 392; Bohar v. Grand Fraternity, 22 D. R.

OPINION BY HEAD, J., October 11, 1915:

The admirable report of the referee which was adopted by the learned court below not only fully states the facts but convincingly disposes of a number of legal questions raised and pressed at the hearing before him. In the view we take of the controlling questions in the case, it will not be necessary we should further discuss them.

The claim presented by the plaintiffs is supported at least by every consideration of natural justice. Some months before his death, John Hvasta found himself afflicted with a serious sickness which incapacitated him for work. He needed care, nursing, medical attention, etc. He had been deserted by those on whom a man must ordinarily rely for the aid he requires under such conditions. Unable to work, he was without means. Even his own sister declined to receive him into her house or aid him in any manner. He had been for a number of years a member of the defendant union. He held its certificate, under the terms of which it was liable to pay to his beneficiary the sum of $1,000, after his death, if down to that time he kept his membership in good standing. There was nothing in the charter or by-laws of the defendant—leaving aside for the moment any consideration of our statute,—to prevent his substitution of another beneficiary for the one originally named in his certificate.

Under these circumstances he applied to the plaintiffs and agreed with them that if they would receive him into their house, provide him with food and lodging, medical attention and care, and pay to the defendant regularly the dues that would be necessary to retain his membership, he would substitute the plaintiffs as beneficiaries in his certificate to the extent of $700. As the plaintiffs, in consideration of such change, were to assume forward obligations and payments that might last

for an indefinite time, they declined to make the contract unless the defendant should become a party to it. They went first to the officers of the local union, of which Hvasta was a member, and explained to them the nature of the undertaking on which they proposed to enter. The local union agreed that the assignment or substitution should be made and entered the same upon the books or records in their charge. To still further protect themselves, the plaintiffs then went to the national president to learn from him the attitude of the organization at large toward the proposed arrangement. The referee finds that officer assured them of its validity and promised that if the dues of the member should be regularly paid by the plaintiff as long as the member lived, the union would, on his death, pay the sum of $700 to the plaintiffs. With this promise they were content and immediately began the performance of the duties imposed on them by the agreement.

When Hvasta died, some seven months later, the contract into which they had entered with him and this defendant had been fully executed by them. Every particle of the valuable consideration they had agreed to pay had been fully discharged. They had regularly paid the defendant the necessary dues and they were received and retained by the union. They had relieved the latter of all obligations—imposed by the membership of Hvasta—to aid him during the time of his sickness that followed the execution of the contract. After his death the defendant refused to recognize the claim of the plaintiffs and this action was begun to compel the payment of the $700 to which we have referred.

Although the defendant was incorporated in 1892, under the laws of the State of Ohio, we accept the conclusion of the learned referee that in the disposition of this case our action must be controlled by the laws of our own State. It is not now important whether this conclusion follows from the nature and character of the contract we are to consider; or rests on the presumption

raised by the record before us that the law of Ohio is identical with the law of Pennsylvania.

Now the basic proposition of the defense is this: Although we joined with our deceased member and these plaintiffs in making a contract which rested on a valuable consideration moving from the plaintiffs both to Hvasta and to this defendant; and although the plaintiffs, on the faith of that contract, fully performed their obligations both to Hvasta and the union, we jointly did an act prohibited by the State of Pennsylvania. The union may therefore retain the fruits of the forbidden contract and successfully assert that the statute extinguishes its liability to perform any part of what it agreed to do. The cases ought to be and are rare indeed in which such a defense can be successfully maintained. It never can be, it never should be out of any consideration for the defendant who advances it. It is only where some public interest or policy is so necessarily involved that it overrides any consideration of individual rights or duties that the statute should be held to sweep away the individual rights.

Does the Act of April 6, 1893, P. L. 7, strike down and prohibit the contract, which it has been found the defendant made in this case, so that the plaintiffs, resting their case on such prohibited contract, can demand no aid from the courts in its enforcement? It will be observed the plaintiffs, in making out their case, in no way need the assistance of the statute to support it. The defendant did not receive its corporate life through the instrumentality of that legislative act. The plaintiffs are not confronted by any necessity to introduce or rely upon the statute in order to make out their case. The defendant, to escape its otherwise established liability, must call in the statute; agree that it entered into a contract prohibited by it; and that it received and retained the fruits of such contract, and then contend it is absolved by the statute itself from any obligation to stand by the contract it has made. Let us look at

the act. It is entitled, "An Act defining fraternal, beneficial and relief societies and their status......, and exempting them from taxation and from the supervision of insurance commissioner." It proceeds to declare that corporations, societies or voluntary associations, then existing or thereafter to be created or formed, shall exercise certain rights if or in case that the money which they collect from assessments or dues shall be applied—so far as death benefits are concerned—to the family, heirs, blood relatives, affianced husband or wife of or to persons dependent upon the member. It further provides that societies managed and conducted according to its requirements shall be regarded as beneficial societies and not as insurance companies, "and shall be exempt from the provisions of insurance laws of this State, and no law hereafter passed shall be applied to them unless they be expressly designated therein, and that all funds of such fraternal beneficial societies shall be exempt from the State tax on money at interest."

Where, in the language of this statute, can be found any legislative declaration that a corporation, incorporated under the laws of the State of Ohio and lawfully doing business in the State of Pennsylvania, may not contract for a valuable consideration that it will pay to a designated party a certain sum on the death of one of its members who has died in good standing? In Maneely v. Knights of Birmingham, 115 Pa. 305, the charter of the defendant corporation provided, "The purpose of this corporation shall be the maintenance of a society for the purpose of benefiting and aiding the widows and orphans of deceased members." A member of that society undertook to assign or turn over to one who was neither his widow nor orphan the fund which would be payable at his death. The circumstances much resemble those in the case before us. Mr. Justice GREEN, speaking for the Supreme Court, in considering the provision of the charter we have quoted, said: "Construing these words, the learned court below held that

it was not within the power of the defendant to stipulate for the payment of the benefits to any person, other than the widow and orphans, who might be designated as the recipient by the deceased under article nineteen of the Constitution. We think this is too narrow and strained a view to take of section 2 of charter quoted above. While it is true that the general purpose of the corporation is there stated to be the maintenance of a society for benefiting and aiding widows and orphans of deceased members, it must be observed that this is only the statement of a general purpose. It is only the recital of an object to be accomplished, and which doubtless is accomplished in the great majority of cases, even though in exceptional cases the benefits may, by special contract, be paid to other persons than the widow or orphans. There is no prohibitory or restrictive language excluding from the powers of the corporation the right to contract specially with the member for the payment of benefits to other persons than his widow or orphans."

In Hunter v. Firemen's, Etc., Assn., 20 Pa. Superior Ct. 605, President Judge RICE plainly recognized the situation here presented, although the decision in that case did not involve the determination of the precise question before us: "Nor is it necessary to decide the question whether the Act of April 6, 1893, P. L. 7, applies to such an association as this, nor the question whether the deceased member had a right to designate one as beneficiary who was neither his wife, nor his child, nor a member of his family, nor his heir, nor his blood relation, nor a person dependent upon him. Even granting that he had that right, and that upon his exercising it a contract would have been created between him and the association whereby the latter would have been bound to pay the money to such person, the fact remains that he did not exercise nor attempt to exercise the right in the mode pointed out in the Constitution."

If, under the facts of this case, we were considering

only the status that existed between Hvasta and these plaintiffs after the latter had undertaken the performance of their contractual obligations, we would find it well stated in King v. Supreme Council, 216 Pa. 553, in the following language of Mr. Justice STEWART: "It was upon the strength of the assurance given by Conway to his wife that she was to remain the beneficiary except as she should appoint her children instead, that the wife was induced to keep alive the insurance by paying the assessments out of her separate estate. It is impossible to regard this as anything but a present assignment to take effect and attach as soon as the fund came into existence. As between these parties there was nothing to prevent it from so operating. The right of disposition of the fund rested in Conway, the member. A contract, upon sufficient consideration, to appoint, was held in Penna. R. R. Co. v. Wolfe, 203 Pa. 269, to be enforced in equity."

In disposing of the present case, it is no concern of ours to determine whether or not, under the laws of the State of Pennsylvania, the defendant is a beneficial society or an insurance company. We are not called upon to determine whether it is or is not by reason of anything it has done, exempt from the laws affecting insurance companies or from the payment of taxes ordinarily collected on money at interest. We have not an interpleader case in which we can or should undertake to pass judgment on the adverse rights of several parties to a fund in court paid in by a stakeholder. Our examination of the Act of 1893 has led us to the conclusion that it does not either prohibit or declare invalid such a contract as the present defendant has made with these plaintiffs. That being true, there remains no sufficient legal reason why the plaintiffs should not receive the fruits of the contract into which they honestly entered and which they faithfully performed.

The order of the learned court below dismissing the exceptions to the report of the referee is reversed and

set aside.  The exceptions are reinstated and the record
is remitted to the court below with direction to enter
judgment for the plaintiffs for the amount of their claim
unless legal or equitable cause to the contrary be shown.
The costs of this appeal to be paid by the appellee.