## Shepler *v.* Pennsylvania Railroad Company et al. (Shepler, Aplnt.).

Argued October 5, 1938; reargued March 22, 1939. Before KEPHART, C. J., SCHAFFER, MAXEY, DREW, LINN, STERN and BARNES, JJ.

*Wm. S. Rial,* with him *S. W. Bierer* and *H. E. Marker,* for appellant.

*John R. Keister,* with him *John G. Buchanan,* for appellee.

OPINION BY MR. JUSTICE STERN, April 17, 1939:

This is a controversy between the divorced wife and the widow of Charles B. Shepler as to which of them is entitled to death benefits payable by virtue of his membership in the Pennsylvania Railroad Voluntary Relief Department. Originally, in 1902, his mother had been named as beneficiary, but in 1910 he substituted his wife, Minnie G. Shepler. In September, 1936, he obtained a divorce, and in February, 1937, married Mary E. Shepler. In April, 1937, he withdrew the name of Minnie G. Shepler as beneficiary and directed that the benefits should be payable to his wife, Mary E. Shepler. He died in May, 1937. The Relief Department disclaimed all interest, and, by agreement of the parties, retained the fund merely as a stakeholder pending judicial decision as to the party entitled.

Minnie G. Shepler admits that in the absence of special circumstances she would have no standing to contest the change of beneficiary. She had no vested interest during Shepler's lifetime, but only an expectancy contingent on his death and subject to the possibility that another beneficiary might meanwhile be named as permitted by the regulations of the Relief Department. In the absence of any rule of the Department to the contrary, Shepler's right to make the substitution was unqualified, and her assent was not necessary: *Brown v. Ancient Order of United Workmen,* 208 Pa. 101; *Noble v. Police Beneficiary Association,* 224 Pa. 298; *Riley v.*

*Wirth,* 313 Pa. 362; *Knoche v. Mutual Life Insurance Co.,* 317 Pa. 370; *Fidelity Trust Co. v. Travelers Insurance Co.,* 320 Pa. 161; *Supreme Council of the Royal Arcanum v. Behrend,* 247 U. S. 394, 399. A different situation is created, however, when the member agrees, for consideration, to name a certain person as beneficiary, or, if one has already been named, not to make a substitution. Illustrations are to be found in *Pennsylvania R. R. Co. v. Wolfe,* 203 Pa. 269, and *Supreme Lodge, Knights and Ladies of Honor v. Ulanowsky,* 246 Pa. 591; in each of these cases there was an ante-nuptial agreement whereby, in consideration of marriage, the member contracted to make his prospective wife the beneficiary. (See also *Grant v. Faires,* 253 Pa. 232, 238; *Visnik v. Mance,* 326 Pa. 399, 402.) Even if no binding contract exists, the member may become irrevocably obligated by force of what amounts in effect to a promissory estoppel. Thus in *King v. Supreme Council Catholic Mutual Benefit Association,* 216 Pa. 553, the member handed his certificate to his wife, who was the beneficiary named therein, telling her that it was hers and promising her he would never change it unless it were to make her children the beneficiaries, and the wife, relying upon this assurance, made payments of assessments and charges upon the certificate.

In the present case Minnie G. Shepler relies, as the basis of her right, on a paper signed by Shepler as follows (defendant's exhibit A):

"August 12, 1936.

"I hereby agree not to change the name of the beneficiary in the Railroad Relief Policy, in the amount of Four Thousand ($4,000.00) Dollars, now standing in the name of Minnie G. Shepler as beneficiary, and further agree to permit the same to remain in her name as beneficiary during the balance of my lifetime.

"C. B. SHEPLER

"Witness:

"Margaret Bender"

As of the same date, August 12, 1936, he and she executed the following agreement (defendant's exhibit B):

"This agreement entered into by and between Charles B. Shepler of the City of Greensburg, County of Westmoreland and State of Pennsylvania, party of the first part, and Minnie G. Shepler of the same place, party of the second part.

"Witnesseth, that the said party of the first part hereby covenants and agrees by and with the said party of the second part that he will pay or cause to be paid unto the said party of the second part the sum of Thirty-five ($35.00) Dollars each and every month for and during the lifetime of the said party of the second part, said amount to be used by the said party of the second part for her support and maintenance and to be paid to her between the 23rd day and 30th day of each month.

"In Witness Whereof the said parties have hereunto set their hands and seals this 12th day of August, A. D. 1936.

"Witness:

| "M. J. K. Davis | Charles B. Shepler | (SEAL) |
| "John McCormick | Minnie G. Shepler | (SEAL)" |

It appears from the testimony of Maurice J. K. Davis, a member of the bar, that he represented Shepler in the divorce proceedings, that he prepared "exhibit A" and perhaps "exhibit B," that the witness Margaret Bender was his secretary, that Shepler signed "A" in his presence, and he, Davis, signed "B" as a witness to Shepler's signature. John McCormick, also a member of the bar, testified that he was counsel for Minnie G. Shepler, that he was present when "B" was signed and witnessed the signature of Minnie G. Shepler but was not present at the signing of "A"; both papers, he said, were prepared in Mr. Davis's office. Margaret Bender testified merely to signing as a witness to Shepler's signature on "exhibit A." No further evidence was offered to explain

the circumstances attending the execution of the two documents, but it is stated by the chancellor in his adjudication that at the time of the hearing before him both papers were fastened together and enclosed in a cover bearing the name of Mr. Davis.

"Exhibit A," in which Shepler promised not to displace Minnie G. Shepler as beneficiary, reveals no consideration for such promise, nor was there any testimony tending to prove any. It is Minnie G. Shepler's contention that "exhibit A" is legally integrated with "exhibit B" as part of one and the same transaction, and that "B" supplies the needed consideration, not only because the seals attached thereto import it, but because Shepler's promise therein was supported by his moral and legal obligation to maintain his wife even though living apart from her (*Lineaweaver's Estate*, 284 Pa. 384, 391). Unfortunately for the soundness of this position there is no indication of any connection between "A" and "B" other than their unexplained presence in the one cover. The fact that they bear the same date does not prove legal relationship or contemporaneous execution: *Dutton's Estate*, 181 Pa. 426, 436. "Exhibit B" is a bilateral agreement; "A" is signed only by Shepler, and there are different witnesses. Mr. Davis, who was apparently the one person, other than Shepler himself, who had anything to do with both papers or who saw both of them executed, did not testify as to any arrangement or circumstances from which it could be inferred that the two documents were not wholly independent of one another. In order to make "exhibit A" legally enforceable the burden was upon Minnie G. Shepler to prove that there was consideration for the promise not to remove her as beneficiary, and she did not sustain this burden merely by producing in evidence another document of the same date signed by her and her husband, there being no internal evidence in the papers, nor any evidence aliunde, that they constituted a single transaction and that the consideration which supported

the one was intended to be carried over into the other. Nor is there any suggestion in the record that Minnie G. Shepler paid out money or otherwise acted or forebore to act in reliance upon the promise that she was to remain the beneficiary. Indeed there is no evidence that "exhibit A," in which this promise was made, was delivered to her, or as to when she first learned of its existence, or that it ever left the possession of Mr. Davis who had prepared it and who was Shepler's attorney.

The decree is affirmed, each party to bear her own costs.