## Hundertmark, Appellant, *v.* Hundertmark.

Argued October 6, 1952. Before STERN, STEARNE, JONES, BELL, CHIDSEY and MUSMANNO, JJ.

*Michael Hahalyak,* for appellant.

*Harry M. Jones,* for appellee.

OPINION BY MR. JUSTICE JONES, November 25, 1952:

This suit in the nature of a bill of interpleader was instituted by the former wife of a decedent against his widow and an insurance company to determine which of the personal litigants was entitled to the proceeds of a certificate of insurance issued by the company on the life of the decedent. The insurance company paid the face value of the policy into the registry of the court and the case was proceeded with to final decree on stipulated facts.

Jane and Paul Hundertmark were married on June 1, 1925. During their marriage the Metropolitan Life Insurance Company issued a certificate of insurance on the life of Paul in which Jane was designated beneficiary. The insured reserved the right to change the beneficiary without the consent of the beneficiary. The policy remained in force and effect to the time of Paul's death on May 16, 1951. In 1948 Paul obtained an absolute divorce from Jane. Prior to the granting of the divorce, they had entered into a separation and property settlement agreement wherein Paul agreed "that the Metropolitan Life Insurance policy taken out on his life, the premiums of which are paid by him, which payments are deducted as a standard deduction by his employer, shall continue to be paid by him for and during his life, and that the beneficiary of said policy, his present wife, shall be made irrevocable, subject only to change in the event said parties should ever be

divorced and the wife should remarry." The insurance company was never informed of the agreement. Paul married the defendant, Doris Hundertmark, in 1949. Jane never remarried. On April 6, 1951, Paul revoked the designation of Jane and named Doris as beneficiary of the policy without any inducement by Doris. The case was heard below by a court en banc which entered a final decree awarding the proceeds of the insurance policy, less certain expenses, to Doris Hundertmark, the defendant; and the plaintiff appealed.

The learned court below erred in failing to give effect (as between the claimants to the fund) to the insured's contractual undertaking to constitute Jane Hundertmark the irrevocable beneficiary of his life insurance policy. Proper disposition of the controversy calls for application of the principle of law followed in *Pennsylvania Railroad Company v. Wolfe,* 203 Pa. 269, 52 A. 247, and *The Supreme Lodge, Knights and Ladies of Honor v. Ulanowsky,* 246 Pa. 591, 92 A. 711.

In the *Wolfe* case, supra, a member of a voluntary relief association had, by an antenuptial contract, agreed to designate his intended wife as the beneficiary under his certificate of membership in the association whereof his sister was the named beneficiary at the time of the antenuptial agreement. The member died without having effected the agreed-upon change of beneficiary either on the certificate or the records of the association. Both the widow and the sister claimed the pecuniary benefits of the certificate. The association paid the proceeds into court and the claimants interpleaded. In affirming a decree awarding the fund to the widow, this court, after pointing out that the relief association, having paid the money into court, was no longer interested, said, ". . . the moment the marriage contract was complete, the wife had an equitable claim to the certificate or to the benefit it represented. It was not that sort of a mutual contract,

which could be, very conveniently, performed by each party at the same time; marriage, the condition, must almost necessarily follow after the promise, and she had no right to substitution until after marriage; but when she married him, she had a vested right in the benefit; a right not dependent on his will or whim, but one no longer in his power as between him and her, to confer or withhold; she could not take back the consideration she gave; he could not give it back to her; he could only formally transfer to her that which by the consummation of the contract was hers."

In the *Ulanowsky* case a member of a beneficial society held a certificate of benefits which he (a widower) had made payable to his daughter. Under the rules of the society, he had the right to change the beneficiary of the certificate at any time. Prior to his second marriage, the insured entered into an antenuptial contract with his prospective wife whereby he agreed to make her the beneficiary of the certificate which he did a few days before the marriage ceremony took place. Subsequent to the marriage, he again made his daughter the beneficiary of the certificate. On the death of the insured, the widow and the daughter each claimed the benefits under the certificate. The society filed a bill in equity to compel the claimants to interplead and for leave to pay the fund into court both of which were done. This court affirmed, per curiam, an award of the money to the widow on the findings of fact and conclusions of law of the chancellor, whose determinative conclusions of law were as follows: "First. Minnie Ulanowsky having agreed, in consideration of being made beneficiary in the policy herein, to marry the insured, and having performed that promise, acquired an equitable right in the benefit represented by the certificate. A formal transfer of the certificate into her name had been in fact made a few days before the marriage. This would have been void if the mar-

riage had not taken place, but when the marriage did take place, in the absence of any objection on the part of the [insuring] society she acquired a legal as well as an equitable right to the benefit of the certificate, which could not be taken away from her without her consent; Penna. R. R. Co. v. Wolfe, 203 Pa. 269. [Paragraph] Second. The change of beneficiary brought about by the insured without the consent of his wife and contrary to her interest was ineffectual to deprive her of her right to the proceeds, and makes the new beneficiary, in effect, a trustee of the proceeds for the wife."

The court below sought to distinguish the *Wolfe* and *Ulanowsky* cases on the grounds that in each of those cases there was an antenuptial contract which determined the beneficiary of the insurance money and that the certificate of death benefits was in a beneficial society and not a commercial insurance company. These suggested distinctions are mere differentiations without any pertinent legal significance. For the antenuptial contract as in the *Wolfe* and *Ulanowsky* cases, there is in the instant case an equally binding and effective separation and property settlement agreement. Although entered into during the marriage (necessarily so) and therefore postnuptial, the agreement did not lack consideration. The reciprocal promises and surrender by the husband and wife of marital rights as a part of the anticipated separation constituted valuable considerations for the contract. In exchange for the husband's promise of the wife's continued future status as the beneficiary of his life insurance policy, she surrendered her right to maintenance and support as well as her inchoate right of dower.

Our cases have uniformly recognized that a contract not to change the beneficiary, entered into by an insured and his designated beneficiary for a valuable consideration, is binding as between the insured, or his volunteer, and the contractually determined beneficiary

and will be enforced in equity. For example, in *Shepler v. Pennsylvania Railroad Company,* 334 Pa. 257, 5 A. 2d 567, where the formerly named beneficiary was denied a right to the proceeds of the policy because there was no consideration for the insured's promise not to change the beneficiary, this court took occasion to note that "A different situation is created, however, when the member agrees, for consideration, to name a certain person as beneficiary, or, if one has already been named, not to make a substitution [citing as illustrations the *Wolfe* and *Ulanowsky* cases]." In *King v. Supreme Council Catholic Mutual Benefit Association,* 216 Pa. 553, 556, 65 A. 1108, a postnuptial agreement by an insured to continue his wife as the beneficiary of his death benefits was held to be implied as a matter of law under the circumstances. This court there said: "The case calls for an application of the same principles that governed in the case of Penna. R. R. Co. v. Wolfe, 203 Pa. 269. Here, as there, the association [the insurer] has wholly withdrawn from the controversy by paying the fund into court; and it is not a question in which it has any concern." Later, in *Visnik v. Mance,* 326 Pa. 399, 402, 191 A. 127, where the originally designated beneficiary's claim was disallowed because he failed to prove a contract with the insured that he be continued as the beneficiary, we there said,—"The law appertaining to the equitable assignment of the benefits of an insurance policy is well settled in this state. There is no doubt that a beneficiary named pursuant to a definite agreement that he shall be so named, by virtue of a valuable consideration moving from him, acquires a right in the policy or the proceeds thereof that will be protected against subsequently named beneficiaries who have no superior equity [citing cases]." See, also, *Mocan v. Nejak,* 126 Pa. Superior Ct. 149, 152-153, 190 A. 208.

The learned court below based its conclusion on the cases of *Shay v. Merchants Banking Trust Company*, 335 Pa. 101, 6 A. 2d 536, and *Fidelity Trust Company v. Travelers Insurance Company*, 320 Pa. 161, 181 A. 594. Neither of those cases is presently in point. The *Shay* case was a contest between the named beneficiary of a policy and the insured's later assignee thereof for value. The assignment was held to be an effectual exercise of the insured's unencumbered right to change the beneficiary. The assignee was accordingly awarded the proceeds of the policy. In the *Fidelity Trust Company* case the first named beneficiary (a wife), for whom the insured later substituted another beneficiary, failed to prove the contract which she contended bound the insured not to change her as the beneficiary. However, the plain implication of the reasoning of this court in the *Fidelity Trust Company* case is that, if the eliminated beneficiary of the policy had been able to prove a binding contract on the part of the insured not to change the beneficiary, her right to the proceeds of the policy would have been good as against the substituted beneficiary.

In the instant case, the court below further mistakenly considered the first wife a volunteer and deemed the "equities" to be with the second wife. The legal situation is that the first wife was a contractually irrevocable beneficiary for value and the second wife was the "volunteer". As the stipulated facts import, the latter did not become beneficiary of the policy for value: see *Haller v. Haller*, 45 Pa. Superior Ct. 409, 414.

The appellee argued at bar and, since then, by supplemental brief that the fact that the insurance here involved was under a group policy rendered it impossible for the insured validly to contract not to change the beneficiary of his participation certificate. No material distinction, however, is to be drawn between

a group insurance certificate and an ordinary insurance policy with respect to an insured's power to contract away his right to change the beneficiary where each of the policies confers on the insured such right. In both *Visnik v. Mance* and *Mocan v. Nejak,* cit. supra, the certificates of insurance were under group policies. True enough, the alleged irrevocable designation of beneficiary was rejected, but, for lack of a contract for value not to change the beneficiary and not because the insurance was under a group policy.

The cases which the appellee cites, except for one, enunciate the principle that to make an effective change of beneficiary where the right so to do is reserved to the insured, the requirements of the policy with respect to consonant notification of the insurer must be fully complied with. No one disputes that principle. So far as the insurance company is concerned, the one entitled to the proceeds of a policy, upon its accrual as a liability of the company, is the person named at the time as the beneficiary of the policy in accordance with the company's rules and regulations. That is an entirely different matter than the question which this litigation presents. The one case which the appellee cites where a contract of the insured not to change his beneficiary is involved is a federal case of the Court of Appeals for the Ninth Circuit (*Kohler v. Kohler,* 104 F. 2d 38). The decision in that case was induced by an Iowa statute, peculiar to that State, and is therefore not only not controlling here but it is not even of present value argumentatively.

Nor is the first wife's right to the proceeds of the policy dependent on the fact that the insurance company paid the money into court, as the appellee seems to infer. The first wife's right to the benefits of the policy as against the later substituted beneficiary would have been no different had the company paid the latter the insurance money as the designated beneficiary

of the policy on its books at the time of the insured's death: see second conclusion of law in the *Ulanowsky* case, quoted supra.

The decree is reversed and the fund awarded to the plaintiff, Jane Hundertmark; each party to pay her own costs on this appeal.

DISSENTING OPINION BY MR. JUSTICE MUSMANNO:

This is one of those unfortunate cases where one of two deserving women must suffer. Jane Hundertmark married Paul Hundertmark in 1925 and divorced him in 1948. Doris Hundertmark married Paul Hundertmark in 1949 and became his widow on May 15, 1951. Prior to their divorce, Paul and Jane Hundertmark entered into a separation agreement wherein Paul agreed that the beneficiary of the group insurance policy which he carried would "irrevocably" be Jane's. The insurance policy gave the insured the right to change the beneficiary. On April 6, 1951, Paul Hundertmark availed himself of this right and made his then wife, Doris, the beneficiary.

In the resulting litigation between the divorced wife and the widow over this insurance the lower court awarded the benefits of the policy to the widow. I agree with the lower court that the equities are with the defendant "because she was not a party to the separation agreement, had no knowledge of its provisions, did not induce the insured, her husband, to make her the beneficiary, and he had continued to reserve the right to change the beneficiary in his contract with the Insurance Company."

Jane Hundertmark claims under an assignment but the insurance certificate prohibits an assignment. In finding for the widow the lower court distinguished the cases of *Pennsylvania Railroad Company v. Wolfe*, 203 Pa. 269 and *The Supreme Lodge, Knights and Ladies of Honor v. Ulanowsky*, 246 Pa. 591. The majority

opinion here declares that the distinctions are "mere differentiations without any pertinent legal significance." It is, I suppose, a matter of view but I see a distinction between obligations arising out of a contract to marry and developments following a contract to dissolve a marriage.

There can be no doubt a mutuality of consideration flows from an ante-nuptial agreement, but that certainty does not follow in a post-nuptial agreement since already the parties are beholden to each other. Although the agreement entered into between Paul and Jane Hundertmark states "that the beneficiary of said policy, his present wife, shall be made irrevocable," the grant could *not* be irrevocable since the grantor withheld the right in the insurance policy to change the beneficiary. If Jane was cognizant of the provisions in the insurance policy and it must be assumed that she was so cognizant since her claim is based on the insurance policy as it existed at the time of the agreement, she must be charged with knowledge of the provision which could oust her from benefits of the policy by the simple act of the change of beneficiary.

Without entering into any situation which brought about the divorce between Jane and Paul Hundertmark, I believe that Paul owed a greater duty to Doris Hundertmark, after he married her, than to his previous wife. Jane agreed to leave him, Doris agreed to live with him. When Jane entered into the agreement to depart from her husband she envisaged the cessation of an intimate relationship and the beginning of a distant one. On that business basis the law required her, short of fraud being practised upon her, to inquire into every provision of the policy supposedly assigned to her. To me it is not equitable that Doris Hundertmark, an innocent party to the transaction should suffer because of the failure of Jane Hundertmark to probe into her rights.

148

··  The majority distinguish the cases of *Shay v. Merchants Banking Trust Company,* 335 Pa. 101, and *Fidelity Trust Company v. Travelers Insurance Company,* 320 Pa. 161, but I still believe they are authoritative of the issue before us.  In the *Shay* case this Court said: (p. 103) "As a result of this provision, plaintiff had no vested right or interest in the insurance but only an expectation of benefit, and when her husband exercised his right to change the beneficiary her expectation became 'merely a prospect that had vanished': Fidelity Trust Company v. Travelers Insurance Co., 320 Pa. 161, 166. *In almost all jurisdictions it is held that, when the right to change the beneficiary is reserved, the insured may assign the policy without the beneficiary's consent . . .*" (Italics supplied)

In the *Fidelity* case, this Court, speaking through Chief Justice MAXEY, said: 166) "When defendant's husband exercised his undoubted right to change the beneficiary, the wife's expectation became merely a prospect that had vanished."

I repeat that it is unfortunate that one of two deserving women must be denied the benefits of the insurance policy in this case.  However, if the law, as I see it, must award the benefits of the policy to Mrs. Doris Hundertmark I see some poetic justice in this: Of the two Mrs. Hundertmarks who vowed to live with Paul Hundertmark "until death did them part," Doris Hundertmark is the one who did.