PROVIDENT LIFE AND ACCIDENT INSURANCE COMPANY, Plaintiff,

v.

Connie GAMMAGE, Gladys Gammage High, James Daniel Gammage, Jr., and Dorothy Gammage Edge, Defendants.

Civ. A. No. 903.

United States District Court
S. D. Georgia,
Brunswick Division.

March 24, 1969.

Wallace E. Harrell, Brunswick, Ga., for plaintiff.

Jerrell T. Hendrix, Brunswick, Ga., Leon A. Wilson, II, Paul N. Brown, Folkston, Ga., for defendants.

## ORDER ON MOTION FOR SUMMARY JUDGMENT

LAWRENCE, District Judge.

### I

In this interpleader proceeding the plaintiff Insurance Company has paid into the registry of this Court $5,000 representing the proceeds of a certificate of insurance issued on the life of James D. Gammage under a group insurance policy held by St. Mary's Kraft Corporation by which the assured was employed. The defendant claimants are (a) the widow of the assured and (b) his former wife and the two children of the deceased. One of the children is a daughter by a prior marriage and the other is a 20-year old son of Gladys Gammage and the assured.

The certificate of insurance permitted a new beneficiary to be designated by the employee at any time by filing a written request. Such change became effective upon the latter signing same in a form satisfactory to the Insurance Company, provided the change is subsequently endorsed on the certificate by authority of the insurer.

On March 18, 1964 Gladys S. Gammage, the wife of the assured, was named beneficiary.

On June 5, 1964 a decree was entered in a divorce action brought in Camden Superior Court by Mrs. Gammage against her husband. On the following day he signed a paper directed to her and "to whom it may concern" stating:

"This is to certify that I have named Gladys L. Gammage beneficiary of the above named policy and hereby contract or agree for her to remain as the beneficiary under such insurance policy upon the following terms:

"1. In the event I predecease my beneficiary, then all costs of last illness, funeral and burial expenses will be first paid out of the proceeds of said policy.

2. The balance to be paid to my said beneficiary and our two children."

A copy of this writing was sent in August, 1964 to the Provident Life and Accident Company which acknowledged receipt.

Subsequently, the assured remarried. On or about February 25, 1965, he executed a change of beneficiary and named his new wife, Connie Gammage, as the beneficiary. Mr. Gammage died on September 27, 1967.

His widow and his former wife and two children as contesting claimants have filed cross motions for summary judgment. The accompanying affidavit of Mrs. High states that in December, 1963 she and James Gammage were separated. Her affidavit, which is easier to quote than to summarize, goes on to show:

"11. On February 3, 1964, during said separation, James D. Gammage requested that said insurance company change the beneficiary of his life insurance policy from affiant to his daughter, Dorothy Gammage Edge * * * as a result of his request, affiant's name was stricken as beneficiary and the said Dorothy Gammage Edge was named as beneficiary thereof * * *"

"12. During said separation, affiant and James D. Gammage, with their attorneys, Robert W. Harrison, Jr., discussed and negotiated a settlement of affiant's claim against James D. Gammage for alimony and division of property. A settlement was orally agreed upon between affiant and James D. Gammage whereby affiant would receive the homeplace in Camden County, Georgia, all personal property therein, an automobile, and be irrevocably named as beneficiary of the said life insurance policy upon condition that same would be equally divided among affiant and the said two children of James D. Gammage * *"

"13. Pursuant to said settlement and agreement, on March 18, 1964, James D. Gammage requested that said insurance company change the

beneficiary of his life insurance policy from the said Dorothy Gammage Edge to affiant * * * as a result of his request, Dorothy Gammage Edge's name was stricken as beneficiary and affiant was named as beneficiary thereof. Said life insurance policy was thereupon returned to James D. Gammage, who delivered it to affiant in whose possession it has since been."

"19. On June 5, 1964, when the hearing of affiant's divorce action was scheduled, the said attorney had failed to prepare the aforesaid separate agreement relative to the life insurance policy and affiant objected to proceeding until same was executed and delivered to her. Affiant was assured by said attorney and by James D. Gammage that her possession of the original policy would protect her and that the separate agreement would be immediately prepared, executed and delivered to her. Because of these assurances * * * affiant felt safe to proceed with the hearing of her divorce action and did so."

"20. It was suggested by said attorney and James D. Gammage, and agreed to by affiant, that the agreement relative to the life insurance policy be separate and not referred to in the divorce proceedings so that James D. Gammage would not be embarrassed with his employer and fellow employees.

"21. As a result of the above, on June 6, 1964, the said attorney prepared, James D. Gammage executed and delivered to affiant a written, notarized agreement addressed to affiant and "to whom it may concern" that he had named affiant beneficiary of said life insurance policy * * *"

"23. Thereafter, when affiant discovered that the life insurance policy was within one day of lapsing for nonpayment of the premium by James D. Gammage, affiant went to the office of Gilman Paper Company and talked with Jack D. Malone * * * At that

time on March 17, 1965, affiant paid the $3.00 premium necessary to prevent the life insurance policy from lapsing."

## II

■ Volunteer beneficiaries under life insurance policies in which the right to change the beneficiary is given possess no vested interest therein prior to the death of the assured. Freeman v. Atlanta Police Relief Association, 191 Ga. 200(1), 12 S.E.2d 616; Hudson v. Hudson, 220 Ga. 730, 141 S.E.2d 453; Metropolitan Life Ins. Co. v. Shalloway (Ga., 5th Cir.), 151 F.2d 548; Malone v. Cohn (Ga., 5th Cir.), 236 F. 882. By virtue of express provisions as to change of beneficiaries in life insurance policies the insured may at will change the beneficiary. Washburn v. Washburn, 188 Ga. 468(1), 4 S.E.2d 35. However, an assured may foreclose his rights in that respect; for example, where he agrees "with the designated beneficiary, for a valuable consideration, not to change the beneficiary, or by subsequent facts establishing equitable interest in the beneficiary." *ibid.* 1(a) In such cases courts will recognize the equities arising in favor of such beneficiary and protect him as against a subsequent volunteer beneficiary. Royal Arcanum v. Riley, 143 Ga. 75, 78, 84 S.E. 428; 46 C.J.S. Insurance § 1171.

■ The effect of settlements in divorce cases on the right of the insured to change a beneficiary under a policy of life insurance has frequently arisen. See 52 A.L.R. 386; 175 A.L.R. 1231–1233. The terms of a property settlement agreement may preclude the insured from making a change of beneficiary even though he is given this right by terms of the insurance policy. Metropolitan Life Insurance Company v. Enright, D.C., 231 F.Supp. 275. In Am. Jur., Insurance, § 1676 the cases of Campbell v. Prudential Ins. Co., Ohio App., 73 Ohio Abst. 262, 137 N.E.2d 515 and Hundertmark v. Hundertmark, 372 Pa. 138, 93 A.2d 856 are cited. In the former the assured agreed in a separation agreement, supported by valuable consideration, to keep a policy in force and to name his children as beneficiaries. The Ohio Court of Appeals held that the insured thereby "estopped himself from invoking the privilege of changing the beneficiary under the policy as fully as if the designation of the plaintiff was set forth in an irrevocable clause in the policy." In Hundertmark v. Hundertmark, *supra,* the Supreme Court of Pennsylvania in connection with a property settlement agreement under the terms of which the assured's present wife was made an irrevocable beneficiary under a policy held that her husband could not thereafter make a subsequent wife a volunteer beneficiary.

## III

The affidavit furnished by Gladys Gammage High is not controverted by any counter-showing. True, it is arguable that the "Stipulation" as to division of property and alimony entered into between James Gammage and his wife on April 30, 1964 and the subsequent divorce decree incorporating such contract by reference are inconsistent with the contention of Mrs. High that the insurance certificate was part of the settlement of property rights at the time of the divorce. By its terms the Stipulation dealt only with the residence, the furniture and an automobile. Title to these was expressly confirmed in Gladys Gammage in full settlement and satisfaction of all claims by her for support, maintenance and alimony. Neither the agreement nor the decree referred to the rights of either party under the insurance certificate. It could be contended by the widow that the separation agreement entered into in April, 1964 was intended to settle and did dispose of all questions of property rights and all claims and that the absence of any reference to the policy in the contract as well as in the divorce decree left the insured free to change the beneficiary. In other words, the widow might assert

that assured's divorced wife was a mere volunteer beneficiary without any vested right in the certificate.[1]

However, all the attendant circumstances confirm the direct evidence adduced on affidavit to the effect that her rights under the policy were negotiated along with her claims to the real property and chattels and that it was dealt with as a part of and contemporaneously with the divorce, though by a separate writing. Significant circumstantial evidence supporting the affidavit of Mrs. High include (a) the date of the assured's written statement concerning disposition of the proceeds of the policy which was delivered the day following the divorce; (b) the request of the insured on March 18, 1964, during the same month that he gave a quit claim deed to the residence, that the beneficiary of the policy be changed from his daughter to his wife, Gladys Gammage, who was then living separately; (c) the delivery of the original certificate by him to her and its retention by her, and (d) the subsequent payment of premiums by Mrs. Gladys Gammage made in order to prevent the lapsing of the insurance.

I find no genuine issue of fact in respect to the existence of a vested interest in Mrs. Gladys Gammage High and the two children in the policy. All of the equities are on their side and among them I cannot overlook the assured's misrepresentation at the time he changed the beneficiary to his new wife, Mrs. Connie Gammage, that the certificate had been mislaid or destroyed.

## IV

The Clerk is ordered and directed to disburse the fund in the registry of the Court as follows:

1. Payment of the expenses of the last illness, funeral and burial of the insured, or the reimbursement thereof to any person who may have advanced same, subject, however, to approval by the Court.

2. Payment of court costs.

3. Payment of $250 to the law firm of Bennet, Gilbert, Gilbert and Whittle as attorneys' fees for bringing the interpleader and for their services in connection therewith.

4. Payment of the remainder of the proceeds equally to Mrs. Gladys Gammage High, James Daniel Gammage, Jr. and Dorothy Gammage Edge.

---

1. In the case of Re Quantius' Will, 58 N.M. 807, 277 P.2d 306 (cited in Am.Jur. Insurance § 1677, n. 12) a clause making a daughter an irrevocable beneficiary under the husband's life insurance policy was added to a separation agreement after the divorce decree was entered. The Court held that such a provision was without consideration and that the daughter could not enforce same so as to prevent a change of beneficiary by their father.