[Civ. No. 16205.   First Dist., Div. One.   Mar. 22, 1955.]

JOHN MARIA MONICA, Respondent, v. MANUEL PELI-
CAS et al., Defendants; ARMINDA PELICAS, Ap-
pellant.

Standley Walter for Appellant.

Wagener & Brailsford for Respondent.

WOOD (Fred B.), J.—The judgment declares that plaintiff is and ever since February 27, 1948, has been the equitable owner of an undivided fractional interest in a house and lot which defendants Manuel and Arminda Pelicas as joint tenants acquired on that date.

Defendant-appellant Arminda Pelicas claims the evidence does not support the findings of fact and conclusions of law upon which the judgment is based.

The principal findings are these: Plaintiff can neither read nor write. He speaks English only slightly and with considerable difficulty. He and Arminda opened a savings account in joint tenancy. At all times the money deposited was the sole money of plaintiff. The account stood in their names for purposes of convenience only, without intention at any time of passing ownership or title thereto to Arminda. Plaintiff at no time gave Arminda permission to use the funds on deposit in the account for the purpose of purchasing a house and lot in the name of herself and her former husband, defendant Manuel Pelicas; nor to take title in her name alone. On February 24, 1948, the sum of $6,448 was withdrawn from the account, without plaintiff's knowledge or consent, and immediately applied by Manuel and Arminda to the $15,125 purchase price of a house and lot, Manuel and Arminda taking title as grantees in joint tenancy. Later, Manuel and Arminda were divorced and the divorce decree awarded the house and lot to Arminda as her sole and separate property, whereupon Arminda filed a declaration of homestead upon the property. On July 9, 1948, Manuel and Arminda executed and delivered to plaintiff a promissory note in the principal sum of $6,000 with interest at 1 per cent per annum. The note was made at the suggestion of the defendants in order that plaintiff might have some written evidence of their obligation to him. It is not true that the parties reached an agreement whereby it was determined that the defendants owed plaintiff the sum of $6,000 evidenced by said promissory note.

The trial court concluded that plaintiff was entitled to a judgment declaring that he is equitable owner of an undivided 6448/15125 interest in the house and lot.

Defendant Arminda Pelicas* challenges (1) the finding that plaintiff at no time gave her permission to use the funds in the bank account for the purpose of purchasing a house and lot in her name alone or in her name and that of her former husband Manuel, (2) the finding that the money was withdrawn from the account without plaintiff's knowledge and consent; and (3) the finding concerning the $6,000 note.†

We have examined the record and are convinced that all of the findings, including the challenged findings, are amply supported by the evidence. A summary of some of the significant portions of the supporting testimony follows. Plaintiff testified that he told Manuel that Manuel could use the money to buy a house; that if Manuel ever saw a house that he liked and wanted, Manuel could use the money in this account. Asked if he had not told Arminda's father that Arminda could use the money in the savings account whenever she needed it, plaintiff said: "No, sir, Manuel Pelicas is all" and "I said I told Manuel Pelicas that he could use my money to buy a house whenever he saw fit, but no one else." Asked if he ever told Arminda Pelicas she could withdraw $6,448 on February 24, 1948, plaintiff replied: "To her, no . . . I never gave her the authority to take the money, but I did tell her husband he could take the money." Asked if Arminda was to use the money in this account to buy a house in plaintiff's name, plaintiff replied: "I did not say my name, just to help him buy a house." Arminda's mother said plaintiff discussed this savings account with her many times. Asked why plaintiff would speak about his account, the mother said: "I told you he got so much money in the bank, to help Manuel Pelicas." Asked what plaintiff said, she replied: "Mr. Monica say he like to help Mr. Pelicas to buy the home for himself."

Arminda testified that her husband told her to withdraw the money and that the whole $6,448 went into the house.

The $6,448 was withdrawn February 24, 1948, while plaintiff was at sea. He went to sea January 26 and returned June 27, 1948.

---

*Defendant Manuel Pelicas filed a general denial. He did not testify, nor did he appeal.

†Upon oral argument defendant's counsel advanced the view that plaintiff had not adequately pleaded a constructive trust. That point is not well taken. The facts pleaded in the second count of the amended complaint clearly support a constructive trust as proved by the evidence and found by the trial court.

When plaintiff returned from sea, Manuel informed him they had taken the money from the bank to buy a house. Asked if there was any conversation between plaintiff and Manuel as to how Manuel was to withdraw the money, plaintiff said: "No. All he said to me was that he went and got the money to buy the house."

Manuel told plaintiff he was going to make out a paper to show that he owed plaintiff the money; in case Manuel ever had an accident he wanted plaintiff to know that his money was secure; plaintiff did not ask Manuel for the note; it was Manuel's idea. Arminda also testified the giving of the note was Manuel's wish.

It is true that plaintiff seemed a little uncertain whether, upon his return from the sea, Manuel told plaintiff that "I" (Manuel) or "we" (Manuel and Arminda) had used the money to buy a home, but, whichever way Manuel said it, plaintiff was not thereby informed that title was taken as joint tenants instead of solely in the name of Manuel. Accordingly, plaintiff's acquiescence in the transaction at that time (he had said it was all right, he had no objection to it) did not necessarily amount to ratification of the transaction, nor did it necessarily indicate that he had previously authorized such a transaction. That, doubtless, is the way the trial judge viewed it, considered in the light of the findings which he made. ▮ As held in *Stromerson* v. *Averill*, 22 Cal.2d 808, 814-815 [141 P.2d 732]: "[i]nconsistencies only affect the credibility of the witness or reduce the weight of his testimony and it was for the trier of the fact to weigh the evidence and determine his credibility. (10 Cal.Jur. p. 1146, § 364.) ▮ Furthermore, it is the duty of the court in support of a judgment on appeal to harmonize apparent inconsistencies wherever possible. (2 Cal.Jur. p. 938, § 551.)"

Thus it is clear that the evidence supports the findings of fact.

The legal conclusions which the trial court drew seem logically to follow.

▮ Plaintiff's money was taken and used for a purpose different from that which he authorized. He authorized its use to buy a home for Manuel, not for Arminda, not for Manuel and Arminda. Arminda testified that the money in the bank belonged to plaintiff. She and Manuel obtained the money from plaintiff without consideration and applied it to a use unauthorized by the plaintiff and in violation of

the trust and confidence which he had reposed in them. This, if not actually fraud, was at least a "mistake, . . . the violation of a trust, or other wrongful act" within the meaning of those terms as used in section 2224 of the Civil Code and thus constituted Manuel and Arminda "involuntary trustee[s] of the thing gained [the house and lot purchased], for the benefit of the person [plaintiff] who would otherwise have had it." The amount of plaintiff's fractional interest thus created in the property is determined by the ratio which the amount of his money thus used, $6,448, bears to the amount of the entire purchase price, $15,125. (See *Title Ins. & Trust Co.* v. *Ingersoll*, 158 Cal. 474, 490-491 [111 P. 360].)

"The theory of a constructive trust was adopted by equity as a remedy to compel one to restore property to which he is not justly entitled, to another. The person holding the property may have acquired it through fraud, undue influence, breach of trust, or in any other improper manner and he is usually personally liable in damages for his acts. But the one whose property has been taken from him is not relegated to a personal claim against the wrongdoer which might have to be shared with other creditors; he is given the right to a restoration of the property itself. The title holder, is, therefore, said to be a constructive trustee holding title to the property for the benefit of the rightful owner, but he is not charged with responsibility based upon either the actual or presumed intention of the parties. (§ 2224, Civ. Code; *Burns* v. *Ross*, 190 Cal. 269 [212 P. 17]; Restatement, Restitution, § 160.)" (*Bainbridge* v. *Stoner*, 16 Cal.2d 423, 428-429 [106 P.2d 423].) ■ "A constructive trust is imposed not because of the intention of the parties but because the person holding the title to property would profit by a wrong or would be unjustly enriched if he were permitted to keep the property." (*Sampson* v. *Bruder*, 47 Cal. App.2d 431, 435 [118 P.2d 28].) ■ "A constructive trust may be imposed when a party has acquired property to which he is not justly entitled, if it was obtained by actual fraud, mistake or the like, or by constructive fraud through the violation of some fiduciary or confidential relationship." (*Mazzera* v. *Wolf*, 30 Cal.2d 531, 535 [183 P.2d 649]. See also *Heinrich* v. *Heinrich*, 2 Cal.App. 479, 482-484 [84 P. 326]; 25 Cal.Jur. 145-148, Trusts, § 19.)

■ The evidence concerning the making of the note and the purpose of the note was competent and relevant. It did not vary the terms of the writing. It showed that the writing

never took effect as the embodiment of an obligation, upon the familiar principle that evidence is admissible to show that the parties never intended a writing to constitute a contract. (See *Spade* v. *Cossett,* 110 Cal.App.2d 782, 784 [243 P.2d 799], and authorities there cited; also, *Foster* v. *Keating,* 120 Cal.App.2d 435, 453 [261 P.2d 529].) Accordingly, the trial court correctly awarded plaintiff no monetary recovery except his costs of suit.

The judgment is affirmed.

Peters, P. J., and Bray, J., concurred.

A petition for a rehearing was denied April 21, 1955.