722 P.2d 474

Linda Jones WITT, Plaintiff-appellant,

v.

Mary Eugena JONES, Individually and as Personal Representative of the Estate of James Marsh Jones, Defendant-respondent,

and

Dorothy Jones Von Krohn; Marie L. Jones; Janet Helen Berry; Trans World Airlines, Inc.; and Connecticut General Life Insurance Company, Defendants.

No. 15962.

Supreme Court of Idaho.

July 8, 1986.

Everett D. Hofmeister, Coeur d'Alene, for plaintiff-appellant.

Pat W. Arney, Coeur d'Alene, and R. Maurice Cooper, Spokane, Wash., for defendant-respondent.

BAKES, Justice.

Plaintiff appellant Linda Jones Witt appeals from a district court order awarding summary judgment to defendant Mary Jones, her stepmother. Linda sued her stepmother claiming a right to additional proceeds under her father's life insurance policy in which she was a named beneficiary. Suit was brought against defendant Mary Jones in both her capacity as personal representative of the estate of James Jones (Linda's father) as well as in her individual capacity. The district court held plaintiff's cause of action was barred by the statute of limitations or, in the alternative, by application of the doctrine of *laches*. The district court also held that plaintiff failed to allege facts sufficient to support a cause of action for fraud or deceit or the creation of a constructive trust pursuant to the court's powers of equity. We affirm.

Appellant, Linda Jones Witt, is the daughter of James Jones by a previous marriage. Appellant alleges that when she was still a minor her parents, in a divorce proceeding, entered into a property settlement agreement providing that Linda was to be irrevocably designated as a beneficiary to one-half of the proceeds of her father's life insurance policy with Connecticut General Life Insurance Company. She further alleges that this property settlement agreement was subsequently incorporated into the divorce decree obtained in 1951 in California.[1] Linda's father later married the respondent, Mary Jones, to whom he remained married until the time of his death on July 15, 1977, some 26 years after the property settlement agreement was executed.

At the time of his death, James Jones was a resident of Kootenai County, Idaho. His widow, Mary Jones, filed a petition for informal probate in district court following James' death. On October 31, 1977, Mr.

Jones's will was entered in the probate proceeding. In that will, Mr. Jones made no provision for his daughter, Linda, stating, "I have amply provided for her by naming her as beneficiary in certain insurance policies." Apparently, one of the insurance policies to which Mr. Jones was referring was a $150,000 life insurance policy with Connecticut General Life Insurance Company. Linda filed the present action alleging that this particular policy was the very policy which was the subject of the 1951 California divorce proceeding between Linda's mother and father and that as result of that proceeding (specifically the property settlement agreement) James Jones had been required to name his daughter Linda as beneficiary to half of the policy proceeds. However, as alleged by appellant, contrary to that settlement agreement, Mr. Jones on January 29, 1976, changed the designated beneficiaries under the policy and named Linda as only a 13% beneficiary. His wife at the time of his death, Mary, was designated as 50% beneficiary.[2] Linda received her 13% share of the policy proceeds ($19,500) on April 4, 1978. She testified that she was unaware of the property settlement agreement until after her father's death in 1977. She additionally testified *via* affidavit that she did not become aware of her father's breach of that agreement (*i.e.*, the January, 1976, change in designation of beneficiaries) until July, 1981.

Linda brought suit against defendants on July 12, 1982. Defendants Trans World Airlines, Inc., and Connecticut General Life Insurance Company moved for dismissal on grounds that plaintiff had failed to state a cause of action against them; they were later dismissed by stipulation. Defendants Von Krohn, Jones, and Berry had not been served with process at the time the district court entered its order of summary judgment. Thus, the sole respondent on appeal

---

1. Neither the divorce decree nor the property settlement agreement are contained in the record on appeal to this court.

2. The remaining 37% of the policy proceeds were distributed among three other benefi-

ciaries named by decedent: his mother, Marie L. Jones, 13%; his sister, Dorothy Jones Von Krohn, 11%; and a personal friend, Janet Helen Berry, 13%.

is Mary Jones, who was sued both in her individual capacity, and as personal representative of the estate of James Jones.

Appellant raises three issues: (1) on the claim against respondent, in her capacity as personal representative of the estate of James Jones, did the trial court err in concluding that appellant's claim was barred by the statute of limitations; (2) on the claim against respondent in her individual capacity, did the district court err in refusing to impose a constructive trust on the proceeds which respondent received from the Connecticut General Life Insurance Company; and (3) whether the district court erred in holding appellant's action barred by application of the doctrine of *laches*. Finding grounds to affirm the district court as to the first two issues raised by appellant, it is unnecessary to address the third issue. We address each of the two issues in turn.

## I

█ The district court held that appellant's claim against respondent Mary Jones, in her capacity as personal representative of the estate of James Jones, was barred by the statute of limitations.[3] The basis of appellant's claim is that her father breached the property settlement agreement by changing the beneficiary on his insurance policy and that, as a result of said breach, she has been damaged. The alleged breach by her father occurred prior to his death and therefore constituted a

claim against his estate, and respondent Mary Jones, in her capacity as personal representative, was the appropriate party to defend against said claim. Although the trial court applied a different statute of limitations, claims against the estate of a decedent are controlled by I.C. § 15–3–803, which provides, in pertinent part:

"**15–3–803. Limitations on presentation of claims.—**

. . . .

"(b) All claims against the decedent's estate which arose before the death of the decedent, including claims ... founded on contract, tort, or other legal basis, are barred against the estate, the personal representative, and the heirs and devisees of the decedent, unless presented within three (3) years after the decedent's death *whether or not notice to creditors has been published.*" (Emphasis added.)

Based upon the foregoing statute, the claim against respondent Mary Jones, in her capacity as personal representative, had to be brought no later than July 15, 1980, three years after the death of James Jones. Plaintiff's complaint was not filed until July 12, 1982, nearly two years late. Appellant having failed to meet the July 15, 1980, deadline, her claim against respondent Mary Jones, in her capacity as personal representative, was barred by the statute of limitations contained in I.C. § 15–3–803.[4]

---

3. The district court apparently held that the applicable statute of limitations was the four-year limitation contained in I.C. § 5–217. The court nevertheless held that the statute began to run on January 29, 1976, the date James Jones breached the terms of the settlement agreement, and concluded that appellant's action, which was commenced on July 12, 1982, was barred by the provisions of 5–217.

4. Appellant in her motion for reconsideration before the district court argued that the limitation imposed by I.C. § 15–3–803 was inapplicable on grounds that a beneficiary's claim to proceeds of an insurance policy is not a claim against the estate of the decedent in whose name the policy is taken since such proceeds in the present case were not distributed by or into the estate of James Jones. However, appellant's

action is against Mary Jones, both in her individual capacity and in her capacity as personal representative of the estate of James Jones. Accordingly, appellant is attempting to assert some sort of claim against Mary Jones in her capacity as personal representative of the estate of James Jones. The only basis for Linda's assertion that she has a claim against respondent Mary Jones, in her capacity as personal representative, would be her contention that her father breached the property settlement agreement. The consequence of said breach being her loss of the right to 50% of the policy proceeds. Clearly, plaintiff's *cause of action is not one for proceeds of the policy per se* (which would be a claim asserted against the entity distributing such proceeds, *i.e.,* the insurance company) rather her third party beneficiary claim is for damages resulting from the breach of a contract

## II.

At the hearing on the motion to dismiss and at the later hearing on the motion for summary judgment brought by respondent Mary Jones, counsel for appellant argued that the 50% of the insurance policy proceeds which were paid to Mary Jones as a designated beneficiary under the policy, were, nevertheless, impressed with a constructive trust because of fraudulent or otherwise wrongful conduct on her part. Therefore, counsel argued, under I.C. § 5-218 the applicable statute of limitations against respondent Mary Jones, in her individual capacity, was three years from discovery of the facts constituting the fraud. Appellant alleged that her discovery of the necessary facts did not occur until July of 1981. The district court held that Linda's complaint failed to allege with particularity any facts setting out a cause of action for fraud against Mary Jones, stating: "There are no factual allegations of any fraud or deceit on the part of the Defendants to keep any information from Plaintiff to secret it or prevent her from learning about it." Presumably the "it" or "information" the court was referring to was the fact that Linda's father had changed the beneficiary designation, listing her as only a 13% beneficiary of the insurance policy.

 On appeal appellant argues that her complaint and affidavit submitted at the hearing on the motion for summary judgment does support a cause of action for fraud and resultant constructive trust. We disagree. A constructive trust arises where legal title to property has been obtained through actual fraud, misrepresentations, concealments, taking advantage of one's necessities, or under circumstances otherwise rendering it unconscionable for the holder of legal title to retain beneficial interest in the property. *Davenport v. Burke*, 30 Idaho 599, 167 P. 481 (1917). To

the extent appellant's claim of constructive trust is premised on fraudulent acts by Mary Jones, it is essential that appellant plead with particularity factual allegations of such fraud. I.R.C.P. 9(b); *Theriault v. A.H. Robins Co., Inc.*, 108 Idaho 303, 698 P.2d 365 (1985). The elements of a cause of action for fraud are: "(1) a representation; (2) its falsity; (3) its materiality; (4) the speaker's knowledge of its falsity or ignorance of its truth; (5) his intent that it should be acted on by the person and in the manner reasonably contemplated; (6) the hearer's ignorance of its falsity; (7) his reliance on the truth; (8) his right to rely thereon; and (9) his consequent and proximate injury." *Faw v. Greenwood*, 101 Idaho 387, 389, 613 P.2d 1338, 1340 (1980).

 Examination of Linda's complaint and her supporting affidavit discloses her failure to allege with any degree of particularity facts which would support the existence of the elements of cause of action for fraud. In fact, the complaint, apart from permissible general allegations of knowledge, only makes the conclusory allegation that "devious tactics [were] imposed by Defendants to thwart Plaintiff. . . ." There are no particular factual allegations disclosing what these so-called tactics were, what made them devious, or when they were made. Linda's affidavit discloses nothing beyond the fact that she was unaware of the property settlement agreement until after her father's death and was unaware of the change of designation of beneficiaries under the insurance policy until sometime in July, 1981. Her affidavit contains no allegations that this lack of information regarding either the property settlement agreement or the designation of beneficiaries under the policy resulted from any acts of fraud or concealment on the part of the defendant Mary Jones.[5] In short, we

---

which is clearly a claim against her father prior to his death and against his estate thereafter.

**5.** The only statements in Linda's affidavit concerning defendant Mary Jones were, "Whenever I confronted or made inquiry of Mary Jones, about my father or his estate, she became curt, short-spoken, distant, and domineering. Com-

munication between us in dealing about these matters became non-existent. *I had no direct contact with Mary Jones after my father's funeral.*" (Emphasis added.) There simply are no allegations in the affidavit indicating that Linda made inquiry of Mary concerning the insurance policy. In fact, her averments in the

think the district court correctly held that plaintiff failed to allege any facts which would support the existence of fraud or deceit on part of the defendant Mary Jones.

 Finally, appellant's complaint fails to allege facts of nonfraudulent but otherwise wrongful conduct which would support creation of a constructive trust. Furthermore, such a claim would be barred by the four year limitation contained in either I.C. § 5–217 (obligations not founded on instruments in writing), *Templeton Patents, Ltd. v. J.R. Simplot Co.*, 220 F.Supp. 48 (D. Idaho 1963) (claims of unjust enrichment partake of the nature of a contract and are therefore governed by statute of limitation for oral contracts); or I.C. § 5–224 (general limitation period prescribed for causes of action not specifically provided for in other sections of the code). Any claim by appellant for constructive trust accrued at the time the insurance policy proceeds were distributed. It is undisputed that the policy proceed checks were issued by the insurer on October 11, 1977. Thus, the statute would have run on October 11, 1981. As stated above, Linda's complaint was not filed until July 12, 1982.

The order of the district court dismissing plaintiff's complaint is affirmed. Costs to respondent. No attorney fees.

DONALDSON, C.J., and SHEPARD and HUNTLEY, JJ., concur.

BISTLINE, Justice, dissenting:

## I

Justice Shepard, specially concurring in *Suchan v. Suchan*, Idaho, opinion filed March 11, 1986, rehearing granted by order dated June 16, 1986, wrote:

I concur in the opinion of the majority since the attitudes of the parties and the now interposition of the property rights of third parties have, in my view, made any other disposition impossible. I suggest, however, that this is a black day in the history of justice in the state of Idaho.... I cannot believe but that a better result reflective of justice could have been obtained.

His candidly frank declaration of what he properly called the disaster in *Suchan* was, in my own view at least, a prompting factor which led to a more penetrating review of the Court's *Suchan* opinion and the decision to grant the rehearing. Today, slightly paraphrasing Justice Shepard's language, I *"could* concur in the opinion of the majority," and participate in another "black day in the history of justice in the state of Idaho," but I believe that a better result reflective of justice can yet be obtained.

## II(A)

The underlying facts and circumstances of this case are far less complex than what confronted the judicial system in the *Suchan* affair, and are basically these: James Jones was the father of the plaintiff, Linda. Linda's mother and father divorced in California in 1951, at which time Linda was a minor. Her mother, in a Property Settlement Agreement, confirmed by decree of the California Superior Court, exacted of Linda's father his agreement to irrevocably make Linda a 50% beneficiary of a life insurance policy on his life in the sum of $150,000—all of which was unknown to the minor child, Linda. Her father married again shortly before his death. The record adduced before the trial court dismissed the action brought by Linda reveals nothing as to the nature of the relationship, if

affidavit indicate that the reason for her delayed claim regarding the proceeds from the policy centered around her belief that she had been named as beneficiary of other insurance policies held by her father and not as the result of any concealment or misrepresentations made by defendant. "When I received the $19,500.00 I believed I would hear further *from the insurance company* with regard to any additional

payment, or verification that there was another policy." It is clear from this statement that Linda was relying on possible information held by the insurance company and not on information possibly held by defendant Mary Jones. As appellant's counsel correctly states in his brief, the estate was not a beneficiary under the policy and therefore had no interest in or claim to the policy.

any, which arose between Linda and her stepmother, the defendant.

Linda's father died testate on July 15, 1977. The will was executed in Coeur d'Alene, Idaho, only 7 months before his death. The sparse record does not disclose whether he was in good or poor health when the will was made; nor does it disclose the circumstances of the making of the will. The will contains a paragraph disinheriting Linda, and providing the reason for doing so:

I make no provision for my daughter, LINDA DIANE JONES WITT, now of Crockett, California, as I have amply provided for her by naming her as beneficiary in certain insurance policies.

The "certain insurance policies" were not further identified in the will and, moreover, there was only the *one* policy which named Linda, the $150,000 policy with Connecticut General Life Insurance Company, which had been in effect since January 1, 1948.

Approximately 10 months before executing his will, Linda's father, contrary to his court-ratified agreement with Linda's mother, executed with Connecticut General a change in beneficiaries whereunder Linda's 50% share was reduced to 13%. Apparently at that time Linda's father had not married the defendant:

The percentages set forth below are intended to be a percent of the total amount of insurance paid at the time of death. Basic, Supplemental, and if applicable, Accidental Death.

Beneficiary # 1: 50% to Mary Eugenia McMahan Groth, Fiancee, Current address: E. 12017 23rd Ave., Spokane, Washington 99206

Beneficiary # 2: 13% to Marie L. Jones, Mother, 3333 E. 17th Ave., Spokane, Washington 99203

Beneficiary # 3: 13% to Linda Jones Witt, Daughter, 405 Alhambra, Crockett, Calif.

Beneficiary # 4: 13% to Janet Helen Berry, Long time friend. May be contacted through her brother Bruce Berry, 2552 2nd Ave. San Diego, Calif. 92103

Beneficiary # 5: 11% to Dorothy Jones Von Krohn, Sister, 6824 Tillamook, Portland, Oregon

This designation was in effect at the time Linda's father died, but wholly unknown to her. Connecticut General on October 11, 1977, in accordance with the foregoing designation of beneficiaries, issued checks as follows:

| | |
|---|---|
| Mary E. Jones | $75,000 |
| Marie L. Jones | 19,500 |
| Dorothy Jones Von Krohn | 16,500 |
| Linda Jones Witt | 19,500 |
| Janet Helen Berry | 19,500 |

Linda's affidavit, uncontradicted and uncontested, states that she was not aware of the divorce decree naming her as 50% beneficiary until after her father's death, July 15, 1977, and this action was filed July 12, 1982, seeking to recover from the named defendants the sum of $55,000.

The sole issue presented to the trial court, which precipitated the decision dismissing the action, was the contention raised by the defendant that the cause of action was barred by statutes of limitation and the doctrine of laches. Before turning to those issues, it is more in order to ascertain the situation which confronted Linda after her father's death and she received Connecticut General's check in the sum of $19,500.[1]

II(B)

Linda's father, for whatever reasons (and those which immediately come to mind to any attorney of even limited experience would be ill health, advancing age, and perhaps a bit of overreaching or undue

---

1. The majority opinion, not above casting Linda in a poor light, does not deign to explain the dismissals of Trans World Airlines, Inc., and Connecticut General Life Insurance Co. Linda's father was a pilot for the former and, through its group insurance plan, obtained the policy in question. Only after filing the action did Connecticut General establish by affidavit that it had never been served or supplied with any notification that the designation of Linda as 50% beneficiary was contractually irrevocable. Obviously, it could not be held accountable for something of which it, as with Linda, knew nothing.

influence), made a mistake in making a change of beneficiary which reduced Linda's share of the policy from 50% to 13%. On that score there can be no argument, there can be no doubt. It was not only a solemn contractual obligation on his part, but the beneficiary of that covenant was his one and only daughter—a fiduciary relationship. Moreover, Linda's mother, who under community property law was a part owner of that policy at the time of the divorce, had bargained for the provision and specifically sought and obtained court approval to the agreement. As matters stood, then, upon the execution of that court-approved covenant, 50% of the eventual policy proceeds was no longer property belonging to her father or mother, but to Linda. A further portion of that covenant executed by Linda's mother specifically granted Linda's father the right to "designate a person of his own choosing as beneficiary of the remaining one-half (½) of the proceeds of the policy."

While we here consider a policy of life insurance, it would be no different if Linda's father and mother had owned a 10- or 20–year bond, or a bank time deposit of money in the same amount. Simply put, as per the agreement, Linda's father had the power of disposition of 50% of the policy proceeds—but no more. Specifically, he had no power to give away Linda's 50%. As a matter of reason, and equally a matter of law, if it wasn't his to give, which for certain it was not, the question to be answered is what do the recipients of Linda's proceeds obtain in such circumstances?

Unlike some circumstances, there is no question raised or capable of being raised that those recipients have any status of *bona fide* purchasers for value and without notice. Having parted with nothing in the way of consideration, each recipient received from Linda's father something of hers, given to them improperly by her father, and which each of them in equity and good conscience should deliver to Linda as rightful owner entitled thereto, and better to do it nicely and without everyone being put to litigation. In essence, the situation is identical to that where a bank employee or bank machine mistakenly places Brown's deposit in Smith's account, or a grocery box boy puts Smith's groceries in Brown's car. The mistake should be rectified as a matter of keeping a clear conscience. Unfortunately, where the amount involved is substantial, greed and avarice step in, and it becomes necessary to look to the judicial system for redress.

### III(A)

Twelve years ago, with Justice Shepard authoring the Court's unanimous opinion, District Judge Arnold T. Beebe was affirmed in a similar situation. *Rowe v. Burrup*, 95 Idaho 747, 518 P.2d 1386 (1974), wherein the Court, in distinguishing between an express trust and a constructive trust, applied the principle of unjust enrichment:

Appellant also confuses the law of constructive trusts with that of express and resulting trusts.

"A constructive trust arises where a person who holds title to property is subject to an equitable duty to convey it to another on the ground that he would be unjustly enriched if he were permitted to retain it." *Davenport v. Burke*, 30 Idaho 599, 167 P. 481 (1917). V., A.W. Scott, The Law of Trusts, § 462 (3d ed. 1967); Restatement of Restitution, § 160 (1937). While a trustee of an express trust may have active duties of management, a constructive trustee has only the duty to surrender the property subject to certain equitable adjustments. Scott, The Law of Trusts, § 462, 462.1. Under a constructive trust theory where the subject property is in possession of the person upon whom the constructive trust is imposed, the traditionally appropriate remedy is to compel the constructive trustee to convey the property to the constructive beneficiary. Scott, The Law of Trusts, § 462, 462.1, 462.3. Bogert & Bogert, Trusts & Trustees, § 472 (2d ed. 1960).

In confirmation of that statement, not that any is needed, another jurist pointed out:

It is not without significance that in the A.L.I. Restatement, the subject of Constructive Trusts is treated in the Restatement of Restitution rather in the Restatement of the Law of Trusts.

*Papazian v. American Steel & Wire Co. of New Jersey*, 155 F.Supp. 111, 118 (1957).

Principles of unjust enrichment apply, of course, to those who receive and hold the property itself, as well as to those who, as in *Davenport v. Burke*, 30 Idaho 599, 167 P. 481 (1917), hold title to property.

The Introduction Note to § 160 of the American Law Institute's Restatement of the Law on Restitution provides as follows:

"A person entitled to restitution is entitled, in an appropriate case, to a remedy by a proceeding in equity, and not merely to a remedy by a proceeding at law. The available remedies by a proceeding in equity include: (1) a decree establishing and enforcing a constructive trust of property; (2) a decree establishing and enforcing an equitable lien upon property; (3) a decree that the plaintiff be subrogated to the position of another claimant against the defendant. In some cases where the plaintiff would be entitled to enforce a constructive trust or equitable lien upon property if the property could be traced, but he is unable to trace the property, he is to maintain a proceeding in equity to obtain a decree establishing a personal liability of the defendant."

Section 160 then deals with "Constructive Trust" where property is held with "an equitable duty to convey it to another on the ground that he would be unjustly enriched if he were permitted to retain it...."

Linda's brief filed in this Court provides the foregoing note from the Restatement and also advises us that all of the authority cited to this Court was also cited to the trial court. A case from California so brought to our attention in Linda's brief is factually on a par with this case:

In *Day v. Greene*, (Calif) [59 Cal.2d 404, 29 Cal.Rptr. 785] 380 P.2d 385, 94 ALR.2d. 802, suit was brought by the child of Colonel Greene, Eva. After Eva's mother died, Colonel Greene remarried Mary. The Colonel and Mary agreed orally that he would leave everything to Mary in her lifetime, and upon Mary's death she would provide for Eva along with Mary's children, share and share alike. The Colonel abstained from making any testamentary disposition to Eva and left his entire estate to Mary. Upon the Colonel's death, Mary used the estate during her life and died leaving her estate solely to her own children. The Supreme Court of California, seven justices, was unanimous in affirming a constructive trust and in applying the proper statute of limitations:

The statute of limitations to be applied is determined by the nature of the right sued upon, not by the form of the action or the relief demanded. (*Jefferson v. J.E. French Co.*, 54 Cal.2d 717, 718, 7 Cal.Rptr. 899, 355 P.2d 543; *Leeper v. Beltrami*, 53 Cal.2d 195, 213 et seq., 1 Cal.Rptr. 12, 347 P.2d 12, 77 A.L.R.2d 803.) The remedy sought here, i.e., the imposition of a constructive trust, is used to prevent unjust enrichment or to compel restoration of property by one who is not justly entitled to it. The usual situation in which the relief is granted is found in cases where the substantive basis of the action is that the property has been obtained through actual fraud, violation of a confidential relationship, or breach of trust. (*Mazzera v. Wolf*, 30 Cal.2d 531, 535, 183 P.2d 649; *Bainbridge v. Stoner*, 16 Cal.2d 423, 428, 106 P.2d 423; *Monica v. Pelicas*, 131 Cal. App.2d 700, 704, 281 P.2d 269.) The basis of the present action is that Mary violated confidential relationships with her husband and with Eva by failing to perform her part of the agreement after she had benefited from her husband's performance. Such a violation of a confidential relationship constitutes constructive fraud and where, as here, unjust enrichment results a constructive

trust may be imposed. (Cf. *Orella v. Johnson,* 38 Cal.2d 693, 696–697, 242 P.2d 5; *Lauricella v. Lauricella,* 161 Cal. 61, 65, 118 P. 430; *Brison v. Brison,* 75 Cal. 525, 529, 17 P. 689.) The fact that a breach of contract is involved is not decisive as to the applicable statute of limitations. In *Souza v. McCue Construction Co. v. Superior Court,* 57 Cal.2d 508, 511, 20 Cal.Rptr. 634, 370 P.2d 338, we held that section 338, subdivision 4, of the Code of Civil Procedure, relating to relief on the ground of fraud, was applicable where the action was based on a fraudulent breach of a contractual duty. Constructive fraud is the substantive basis of the action to impose a constructive trust in the present case, and where constructive fraud is the gravamen of the action the three-year period prescribed in section 338, subdivision 4, of the Code of Civil Procedure applies. (*Neet v. Holmes,* 25 Cal.2d 447, 467, 154 P.2d 854.) Since this action was filed within three years after Mary's death, it is not barred by the statute.

*Day v. Greene,* 59 Cal.2d 404, 29 Cal.Rptr. 785, 380 P.2d 385 (1963).

That case differs materially from this in only one respect. Here, as Linda's brief points out, she was not aware of her entitlement to 50% of the life insurance proceeds, or of anything for that matter, until after her father's death. She emphasizes that she, a minor child, was not a party to the agreement between her father and mother, and that she knew nothing of that transaction at the time she received the $19,500 check from Connecticut General, and, the California statute referred to in *Day v. Greene,* section 338, is the very statute Idaho's was patterned after—the *three-year* statute. Subdivision 4 thereof makes the three-year limitation applicable to "an action for relief on the ground of fraud or mistake." BUT, that is not all. The ensuing sentence of subdivision 4 of section 338 of the California Code, making that section of the California statute identical to Idaho's I.C. § 5–218(4), reads: *"The cause of action in such case is not deemed to have occurred until the discovery by the aggrieved party of the facts constituting the fraud or mistake."*

In a recent Texas case, the court had occasion to apply principles of unjust enrichment and the remedy of imposing a constructive trust:

By its nature, the constructive trust remedy is broad and flexible. *Meadows v. Bierschwale,* 516 S.W.2d 125, 131 (Tex. 1974). Being remedial in character, constructive trusts have the very broad function of redressing wrong or unjust enrichment in keeping with basic principles of equity and justice. *Id.* Depending on the circumstances, a transaction may provide the basis for a constructive trust *where one party to that transaction holds funds which, in equity and good conscience, should be possessed and owned by another. Id.* Furthermore, there is no unyielding formula to which a court of equity is bound in decreeing a constructive trust, because the equity of the transaction will necessarily shape the measure of the relief granted. *Id.*

*First Nat. Bank of Amarillo v. Bauert,* 622 S.W.2d 464 (Tex.App.1981) (emphasis added).

*Simonds v. Simonds,* 45 N.Y.2d 233, 408 N.Y.S.2d 359, 380 N.E.2d 189 (Ct.App. 1978), is a very recent case involving an action to impress a trust on insurance proceeds and should be extremely persuasive on this Court's disposition of the instant appeal.

Plaintiff Mary Simonds, decedent's first wife, seeks to impress a constructive trust on proceeds of insurance policies on decedent's life. The proceeds had been paid to the named beneficiaries, defendants Reva Simonds, decedent's second wife, and their daughter Gayle. Plaintiff, however, asserts as superior an equitable interest arising out of a provision in her separation agreement with decedent. Special Term granted partial summary judgment to plaintiff and impressed a constructive trust to the extent of $7,000 plus interest against proceeds of a policy naming the second wife as beneficiary, and the Appellate Division

affirmed. Defendant Reva Simonds, the second wife, appeals.

The separation agreement required the husband to maintain in effect, with the wife as beneficiary to the extent of $7,000, existing life insurance policies or, if the policies were to be canceled or to lapse, insurance policies of equal value. The issue is whether that provision entitles the first wife to impress a constructive trust on proceeds of insurance policies subsequently issued, despite the husband's failure to name her as the beneficiary don any substitute policies once the original life insurance policies had lapsed.

There should be an affirmance. The separation agreement vested in the first wife and equitable right in the then existing policies. Decedent's substitution of policies could not deprive the first wife of her equitable interest, which was then transferred to the new policies. Since the proceeds of the substituted policies have been paid to decedent's second wife, whose interest in the policies is subordinate to plaintiff's, a constructive trust may be imposed.

. . . .

There is no question that decedent breached his obligation to maintain life insurance with his first wife as beneficiary. Consequently, the first wife would of course be entitled to maintain an action for breach against the estate. The estate's insolvency, however, would make such an action fruitless. Thus, the controversy revolves around plaintiff's right, in equity, to recover $7,000 of the insurance proceeds.

. . . .

Whatever the legal rights between insurer and insured, the separation agreement vested in the first wife an equitable interest in the insurance policies then in force. An agreement for sufficient consideration, including a separation agreement, to maintain a claimant as a beneficiary of a life insurance policy vests in the claimant an equitable interest in the policies designated (*Stronge v. Knights of Pythias*, 189 N.Y. 346, esp. at pp. 351–352, 82 N.E. 433, at pp. 434–435 [Hiscock, J.]; *Salinas v. Salinas*, 187 Misc. 509, 515, 62 N.Y.S.2d 385, 390 [Shientag, J.], affd. 271 App.Div. 917, 67 N.Y.S.2d 692; see *Ferro v. Bologna*, 31 N.Y.2d 30, 35, 334 N.Y.S.2d 856, 858, 286 N.E.2d 244, 245). *This interest is superior to that of a named beneficiary who has given no consideration,* notwithstanding policy provisions permitting the insured to change the designated beneficiary freely.

This is not to say that an insurance company may not rely on the insured's designation of a beneficiary. None of this opinion bears on the rights or responsibilities of the insurer in law or in equity.

. . . .

. . . . No reason in equity appears for denying plaintiff that interest, so long as no one who has given value for the policies or otherwise suffered a detriment is involved. *The second wife's innocence does not offset the wrong by the now deceased husband. . . .* Due to the husband's failure to do what he should have done, the first wife acquired not only a right at law to sue his estate for breach of contract, a right now worthless, but also an equitable right in the policies, a right which, upon the husband's death, attached to the proceeds (cf. *Salinas v. Salinas*, 187 Misc. 509, 515, 62 N.Y.S.2d 385, 390, *supra; MacDonald v. Conservative Life Ins. Co.*, 292 Mich. 182, 186–188, 290 N.W. 372).

And, since the first wife was entitled to $7,000 of the insurance proceeds at the time of the husband's death, she is no less entitled because the proceeds have already been converted by being paid, erroneously, to the named beneficiaries (see *Lengel v. Lengel*, 86 Misc.2d 460, 465–466, 382 N.Y.S.2d 678, 681–682; *Richards v. Richards*, 58 Wis.2d 290, 293–294, 206 N.W.2d 134; cf. *Hundertmark v. Hundertmark*, 372 Pa. 138, 145–146, 93 A.2d 856). Her remedy is imposition of a constructive trust.

In the words of Judge Cardozo, "[a] constructive trust is the formula through

which the conscience of equity finds expression. When property has been acquired in such circumstances that the holder of the legal title may not in good conscience retain the beneficial interest, equity converts him into a trustee" (*Beatty v. Guggenheim Exploration Co.*, 225 N.Y. 380, 386, 122 N.E. 378, 380). Thus, a constructive trust is an equitable remedy....

It is agreed that the purpose of the constructive trust is prevention of unjust enrichment (*Sharp v. Kosmalski*, 40 N.Y.2d 119, 123, 386 N.Y.S.2d 72, 76, 351 N.E.2d 721, 724, *supra;* Restatement, Restitution, § 160, 5 Scott, Trusts [3d ed.], § 462.2).

Unjust enrichment, however, does not require the performance of any wrongful act by the one enriched (*Lengel v. Lengel*, 86 Misc.2d 460, 465–466, 382 N.Y. S.2d 678, 681–682, *supra; Richards v. Richards*, 58 Wis.2d 290, 293–294, 206 N.W.2d 134, *supra;* see, generally, 5 Scott, Trusts [3d ed.], § 462.2). Innocent parties may frequently be unjustly enriched. What is required, generally, is that a party hold property "under such circumstances that in equity and good conscience he ought not to retain it." (*Miller v. Schloss*, 218 N.Y. 400, 407, 113 N.E. 337, 339; see *Sharp v. Kosmalski*, 40 N.Y.2d 119, 123, 386 N.Y.S.2d 72, 76, 351 N.Y.S.2d 721, 724, *supra; Sinclair v. Purdy*, 235 N.Y. 245, 253–254, 139 N.E. 255, 258–259). A bonafide purchaser of property upon which a constructive trust would otherwise be imposed takes free of the constructive trust, but a gratuitous donee, however innocent, does not (see 5 Scott, Trusts [3d ed.], §§ 468, 474; Restatement, Restitution, § 172).

The unjust enrichment in this case is manifest. At a time when decedent was, certainly, anxious to remarry, he entered into a separation agreement with his wife of 14 years. As part of the agreement, he promised to maintain $7,000 in life insurance with the first wife as beneficiary. Later he broke his promise, and died with insurance policies naming only the second wife and daughter as beneficiaries. They have collected the proceeds, amounting to more than $55,000, while the first wife has collected nothing. Had the husband kept his promise, the beneficiaries would have collected $7,000 less in proceeds. To that extent, the beneficiaries have been unjustly enriched, and the proceeds should be subjected to a constructive trust.

Moreover, the second wife's complaint, if that it be, over the distinction drawn below between her daughter and herself is to no avail.... True, plaintiff might also be entitled to impose a constructive trust on the policy naming the daughter as beneficiary. But that provides no cause for prorating the constructive trust. The beneficiaries are jointly and severally liable, if the analogy applicable to express trusts be applied (3 Scott, Trusts [3d ed.], §§ 258–258.3). Plaintiff's choice not to appeal the dismissal against the daughter should not bar her from collecting in full against the second wife, who may have a right of contribution against the daughter, a question not before the court and not passed on (cf. *id.*).

*Simonds v. Simonds*, 45 N.Y.2d 233, 408 N.Y.S.2d 359, 380 N.E.2d 189 (Ct.App. 1978).

### III(B)

Just three years ago this Court had before it another case where summary judgment had been entered by the trial court against a plaintiff on the defense of statute of limitations. *Cox v. Reis*, 104 Idaho 434, 438, 660 P.2d 46 (1983). In reversing the trial court, Justice Bakes authored the Court's opinion, wherein we observed:

The time when a cause of action accrues may be a question of law or a question of fact, depending upon whether any disputed issues of material fact exist. *See Brown v. Babcock*, 273 Or. 351, 540 P.2d 1402 (1975). Where there is no dispute over any issue of material fact regarding when the cause of action accrues, the question is one of law for determination

by the court. *See Mantz v. Follingstad,* 84 N.M. 473, 505 P.2d 68 (App.1972). *See also* 54 C.J.S. Limitation of Actions § 399(b). On the other hand, where there is conflicting evidence as to when the cause of action accrued, the issue is one of fact for the trier of fact. The case law of other jurisdictions is replete with authority for this position. *See e.g., Enfield v. Hunt,* 154 Cal.Rptr. 146, 91 Cal.App.2d 417 (1979); *Bipso v. Burton,* 147 Cal.Rptr. 442, 82 Cal.App.3d 824 (1978); *George v. W–G Fertilizer, Inc.,* 205 Kan. 360, 469 P.2d 459 (1970); *Hill v. Squibb & Sons, E.R.,* 181 Mont. 199, 592 P.2d 1383 (1979); *Christensen v. Rees,* 20 Utah 2d 199, 436 P.2d 435 (1968); *Ruth v. Dight,* 75 Wash.2d 660, 453 P.2d 631 (1969); *Hill v. Clarke,* [161 W.Va. 258], 241 S.E.2d 572 (W.Va.1978).

As the record discloses, the trial court ruled against Linda on the defendant's motion for summary judgment, supported only by a rather meaningless affidavit of her Spokane counsel, and for the most part repetitious of the pleaded facts and argumentative. The defendant herself, Mary Eugena Jones, subscribed and swore to nothing. Linda's affidavit, on the other hand, was properly factual:

Linda Jones Witt, being first duly sworn deposes and says:

Referring to the Order dated November 3, 1983, in the above matter, and page four, second paragraph, I was not notified of the estate proceedings. With regard to that same Order, page five thereof, I was not in possession of the document the Court referred to "on April 4, 1978" and first became aware of that document and received a copy thereof in July, 1981, from my attorney, Everett D. Hofmeister. I was not aware of the divorce decree naming me as fifty percent beneficiary until after my father's death. Whenever I confronted, or made inquiry of Mary Jones, about my father or his estate, she became curt, short-spoken, distant, and domineering. Communication between us in dealing about these matters became non-existent. I had no direct contact with Mary Jones after my father's funeral.

Attorney Arney, on one occasion mentioned "certain policies" mentioned in the Will, which lead me to believe and seek, if in fact, there were any other policies. It is my vague recollection that I gave my permission to Mary Jones to sign the insurance papers for all beneficiaries, and I had no opportunity to see any documents stating the amount of any policy or disbursements and percentages to beneficiaries, until the same was furnished to me by Mr. Hofmeister. It should also be noted that I was never informed of the probate, so I could file a claim against the estate. Even after discovery of all the facts alleged in my Complaint in this matter, it still took a great deal of time to exclude what I considered the probability that there were other insurance policies. Upon receipt of the insurance money paid to me, I had no way of knowing, and did not know, whether that sum was a partial payment, whether there were other policies, and there was nothing to indicate to me that the money that I received was a "final payment."

To restate: I had never received or seen any document or verification of the amount of the policy or the disbursement of any percentages to beneficiaries until I received the document sent to me by Everett D. Hofmeister, in July, 1981, which I believe was furnished to him by Attorney Arney. This was the first time that I was in actual possession of any document verifying the amount and disbursements of the policy, and the percentages to the beneficiaries. When I received the $19,500.00 I believed I would hear further from the insurance company with regard to any additional payment, or verification that there was another policy. To clarify a foregoing statement, during December, 1977, I received notices of probate of my father's properties in California, and Washington. At the bottom of the notices, Spokane attorney, Seaton Daly, had written, "The above just applies to real property located in

Spokane County, Washington." I continued to wait for notice of the probate of my father's estate in Idaho.

Dated this 21st day of May, 1984.

### III(C)

It may be declared without any fear of contradiction that statutes of limitation are generally viewed with the same regard as bankruptcy proceedings—not favorably.

Where there is doubt as to which limitation period is applicable, the longer should be applied. *Sato v. Von Denburgh*, 123 Ariz. 225, 599 P.2d 181 (1979). On two occasions the Hawaii court has held as follows:

As noted by the United States Supreme Court in *Pattersnon v. Hewitt*, 195 U.S. 309, 317, 25 S.Ct. 35, 36, 49 L.Ed. 214 (1904), "[s]ome degree of diligence in bringing suit is required under all systems of jurisprudence." Just as the statute of limitations establishes the requisite degree for actions at law, so is laches the rule for equitable actions. But a major difference between the statute of limitations and laches is the flexibility of the latter. The statute of limitations consorts with the rigid principles of the common law, but is ill adopted to the flexible remedies of a court of equity." *Id.* As a result, while "[i]n actions at law, the question of diligence is determined by the words of the statute ... [i]n suits in equity the question is determined by the circumstances of each particular case." *Id.*

*Adair v. Hustace*, 64 Hawaii 314, 640 P.2d 294, 300 (1982).

In consonance with these basic fundaments of our judicial system, the courts of the state of Hawaii have consistently resolved ambiguities in statutes of limitations with an approach reflecting a liberality designed so as to give plaintiff-litigants the maximum free access to our courts still consistent with the controlling statutory provision and with the legislative intent that is reflected in enactment. (Citations omitted.)

*Salarea v. City & County of Honolulu*, 55 Hawaii 216, 517 P.2d 51, 54 (1973).

Other cases to the same effect as the foregoing are legion. Somewhere in the past, either while practicing law in district courts, or on reading this Court's opinions, it was readily recognized that the same principles favoring lawsuits on the merits was preferred over allowing defendants out of court on the technicalities of limitation statutes.

### IV

The trial court disposition was not up to the particular judge's usual quality of excellence. For example, his written order of dismissal fails to reflect any recognition that he was ruling on a motion for summary judgment, *with all of its attendant rules and principles relative to all facts and inferences legitimately to be drawn therefrom being viewed in the light most favorable to the party against whom the motion is levelled.* Rather, he seemed to consider that he was making a determination on the merits of the sole issue presented. Unfortunately, as this Court usually views the situation, the order was drawn by defense counsel, an inference properly drawn from the court minutes which state, "Defense counsel is to prepare an appropriate order." The court minutes tell us this much and no more as to the judge's *ratio decidendi* announced from the bench:

The Court found that the action was not brought within the time allowed under the statute of limitations and, further, that plaintiff is guilty of laches in not pursuing any complaint she may have had. R. p. 46.

Worse than the court's inaction, the counsel-prepared order of dismissal contains findings which contain this remarkable bit of adversarial overreaching:

But on October 11, 1977, the plaintiff received her designated amount as beneficiary in the sum of $19,500.00 and endorsed the necessary documents and check indicating that it was payment in full from the proceeds of the policy. R. p. 48.

Equally objectionable, it was defense counsel who, in the order tendered to the court,

elected to treat the action as one for breach of contract occurring on January 29, 1976, when the change of beneficiary was made, and selected the four-year statute as the applicable one, and wrote that it had expired on January 29, 1980, prior to bringing suit. R. p. 48.

On the equitable issue, on a defense record which presented no relevant factual matters, the order as drawn by defense counsel was at least honest, but not very adept. This much was prepared for the court's ready signature:

> From the allegations submitted by the plaintiff and the defendant, I find that the plaintiff has been guilty of laches in not promptly, diligently pursuing any claim that plaintiff might have. R. p. 49.

Obviously, where Linda's affidavit had been submitted it was patently erroneous for the court to sign an order which ruled on the laches issue on the basis of the pleadings alone. This was not a motion for judgment on the pleadings, as in the recent *Sterling* case,[2] but rather was a motion for summary judgment. Moreover, it was patently erroneous for the court to even consider laches where the applicable statute of limitations had not run. The action *was* timely brought. I.C. § 5–218(4).

Commenting just briefly, because the error is rampantly self-evident, nothing in the record justified the supposed finding that Linda endorsed documents and the check indicating that it was payment in full. To have inserted this statement into an order submitted for the signature of the court, in the absence of explanation, is patently not within an attorney's code of ethics. It has undoubtedly created in some of the members of this Court a prejudice against Linda's case. Equally incomprehensible is the trial judge's approval of such tactics as witnessed by his signing the document. The order dismissing the complaint as against the defendant Mary Eugena Jones was clearly in error.

## V

The trial court's disposition, as erroneous as it was, is no worse than this Court's, on a review which encompasses the reasoning and experience of five justices, each armed with two well qualified law clerks.

Primarily disconcerting is that the majority opinion simply refuses to acknowledge any error on the part of the trial court. Instead, it writes that it "finds grounds to affirm"—which is too rich for my poor blood. I had always hoped that an appellate court considered issues raised on appeal, and that it did not of its own volition seek out some solution for affirming which was never urged below, not passed on by the trial court, and not even urged in this Court. Simply put, the majority's treatment of Linda's appeal is a heck of a way to run a railroad. Astute defense counsel in their pleadings at trial did *not* raise as an affirmative defense the bar of I.C. § 15–3–803. Even without looking at the Court's arsenal of rules, I feel certain that statutes of limitation must be pleaded and, if not, are waived. Statutes pleaded in defendants' answer are these, and only these: I.C. § 5–217; I.C. § 5–216; I.C. § 15–3–1006; I.C. § 5–218(4). End of message.

On all issues the majority errs mightily in not applying or considering the proper statute, I.C. § 5–218(4). True, there was a breach of contract by Linda's father—but it was not a *mere* breach, but a fraudulent breach on a mistaken brief. Under the case law and these particular circumstances where a little girl became equitable owner of a $75,000 entitlement, and was deprived of that estate by her aging and perhaps ill father, who thereafter married defendant, and inferentially deprived of it by the child's stepmother, it is not required that an actual fraudulent intent be proven. Mistake is enough, and our statute so reads. Nor does it matter that the defendant may be innocent, a fact that she has not proven or attempted to prove. It is to

---

**2.** *Sterling v. Bd. of Corrections,* 111 Idaho 211, 723 P.2d 755 (1986), pending on petition for re-

hearing.

be remembered, too, that this remarkably drawn order ensued from defendants' motion for summary judgment.

What the majority does to Linda's case, and to the supposed science of jurisprudence, and those attorneys and judges who would like to believe that it could be a science, is unpardonable.